# EXHIBIT D

Declaration of Jeremey Brunssen, Deputy Director of Finance and Program Integrity for the Nebraska Department of Health and Human Services

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

---

THE STATE OF TENNESSEE, et al.,

        *Plaintiffs,*

v.

XAVIER BECERRA, in his official capacity
as Secretary of the United States Department
of Health and Human Services, et al.,

        *Defendants.*

Case No. 1:24-cv-161-LG-BWR

---

## DECLARATION OF JEREMY BRUNSSEN

Pursuant to 28 U.S.C. § 1746, I, Jeremy Brunssen, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this Declaration.

2. I serve as the Deputy Director of Finance and Program Integrity for the Nebraska Department of Health and Human Services ("DHHS") Department of Medicaid and Long-Term Care ("MLTC"). DHHS is responsible for administering Nebraska's Medicaid and CHIP programs.

3. As Deputy Director, I am responsible for several operational functions for the Nebraska Medicaid program including budget, finance, provider reimbursement, claims payment, provider screening and enrollment, and program integrity. These responsibilities include ensuring compliance with state and federal anti-discrimination laws. That comprises overseeing teams that

1

review and evaluate rules and regulations promulgated by federal agencies, including the U.S. Department of Health and Human Services ("HHS"), to determine whether they necessitate policy and operational changes. And where such changes are necessary—either because Nebraska Medicaid does not have a policy required by the regulation or has a conflicting policy—I am responsible, along with the Medicaid Director, and other Medicaid program deputy directors, for executing a plan for bringing Nebraska Medicaid into compliance.

4. DHHS's mission is to improve lives through high-quality, cost-effective care. Accomplishing this mission requires partnership between the provider community, stakeholders, advocates, families, and DHHS employees. DHHS currently serves almost three hundred and forty-six thousand Nebraskans, including low-income individuals, pregnant women, children, caretaker relatives of young children and older adults and adults with disabilities.

5. As of May 1, 2024, approximately 178,875 minors were enrolled in Nebraska's Medicaid and CHIP programs.

6. As of May 1, 2024, approximately 166,973 adults were enrolled in Nebraska's Medicaid program.

7. DHHS received approximately $2.9 billion in total federal funding in State Fiscal Year 2022-2023 for Nebraska's Medicaid and CHIP programs. DHHS estimates that the federal share expended for each program will be even greater in State Fiscal Year 2023-2024.

8. HHS funding is used to pay a portion of DHHS's administrative costs, including many DHHS's employees' salaries and benefits. Most DHHS employees' salaries and benefits are partially funded by the Medicaid Administration Grant.

9. DHHS annually contributes approximately $45 million to Nebraska's state employee health insurance plan ("State Plan") on behalf of its employees including approximately

$20.25 million in federal funds. Included in these contributions is approximately $5.5 million specifically for Medicaid program employees, including approximately $3.6 million in federal Medicaid HHS funds.

10. Nebraska's Medicaid program does not provide coverage for sex-transition surgeries. *See* 471 Nebraska Administrative Code 18-006.01(DD).

11. In 2023, the Nebraska "Let Them Grow Act" was enacted (Nebraska Revised Statutes §§ 71-7301, *et seq.*), disallowing use of state funds for gender-altering procedures for minors.

12. HHS has promulgated new regulations interpreting Section 1557 of the Affordable Care Act's prohibition on discrimination "on the basis of sex" to include "gender identity" and other "sex characteristics." Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024) ("2024 Rule").

13. If the 2024 Rule requires state Medicaid programs and other health insurance plans to cover sex-transition surgeries, Nebraska risks losing significant federal funding.

14. Avoiding that loss would require Nebraska DHHS to make changes to its administrative rules. Changing rules is an administratively burdensome process that requires cross-government cooperation and results in the expenditure of state resources. The administrative process for permanent rules, like those that govern the terms of Nebraska's Medicaid programs, is governed by the Nebraska Uniform Administrative Procedures Act and takes approximately eight to twelve months to complete. This process includes rule drafting, obtaining the review and approval of the offices of the Governor and Attorney General, posting for public comment, rule-making hearing, and a hearing before the Health and Human Services Committee of the Nebraska legislature. This process would cost the State of Nebraska approximately $16,000 in immediate

costs for the regulation promulgation process. Thus, any compliance with HHS's new regulations would require immediate expenditure of significant resources.

15. Moreover, if Nebraska's Medicaid programs were required to cover sex-transition surgeries, there could be an immediate increase in state and federal expenditures.

16. Under current Nebraska law, State funds cannot be used to pay for gender altering surgeries, and DHHS cannot be ordered to pay for such surgeries or treatments for children placed in the custody of the State. If the 2024 Rule preempts State laws and regulations, Nebraska could be ordered to pay for such surgeries on children in the custody of the State, resulting in the expenditure of State funds.

_____
Jeremy Brunssen, Deputy Director of
Finance and Program Integrity

Dated: June 12, 2024