IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, STATE OF MIS-<br>SISSIPPI, STATE OF ALABAMA, STATE OF<br>GEORGIA, STATE OF INDIANA, STATE<br>OF KANSAS, COMMONWEALTH OF KEN-<br>TUCKY, STATE OF LOUISIANA, STATE OF<br>NEBRASKA, STATE OF OHIO, STATE OF<br>OKLAHOMA, STATE OF SOUTH CARO-<br>LINA, STATE OF SOUTH DAKOTA, COM-<br>MONWEALTH OF VIRGINIA, AND STATE<br>OF WEST VIRGINIA, | ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs,* | ) ) ) | Civil Action No. 1:24-cv-161-LG-BWR |
| v. | ) ) | |
| ROBERT F. KENNEDY, JR., in his official ca-<br>pacity as Secretary of the United States Depart-<br>ment of Health and Human Services; UNITED<br>STATES DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES; ANTHONY ARCHE-<br>VAL, in his official capacity as the Acting Direc-<br>tor of the Office for Civil Rights; CENTERS<br>FOR MEDICARE AND MEDICAID SER-<br>VICES; and MEHMET OZ, in his official ca-<br>pacity as Administrator for the Centers for Medi-<br>care and Medicaid Services, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) ) | |

## MEMORANDUM BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................3

ARGUMENT ..................................................................................................................................7

    I.   Plaintiff States' Challenge Remains Live and Justiciable. ...........................................7

    II.  The 2024 Rule Exceeds HHS's Statutory Authority. ....................................................9

        A.   The 2024 Rule unlawfully extends "sex" discrimination to gender identity. ...................10

        B.   The 2024 Rule unlawfully regulates medical practice. .................................................13

    III. The 2024 Rule Is Arbitrary and Capricious. ...............................................................14

    IV. Plaintiff States Are Entitled to Vacatur and Declaratory Relief. ..............................15

        A.   This Court should vacate the unlawful provisions of the 2024 Rule. ..............................15

        B.   This Court also should grant declaratory relief to Plaintiff States. ................................16

CONCLUSION .............................................................................................................................17

# TABLES OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.,*
   57 F.4th 791 (11th Cir. 2022) ........................................................................ 10, 11

*Bostock v. Clayton County, Georgia,*
   590 U.S. 644 (2020) ..................................................................................... passim

*Braidwood Mgmt., Inc. v. Becerra,*
   104 F.4th 930 (5th Cir. 2024) ................................................................................ 15

*City of Arlington v. FCC,*
   569 U.S. 290 (2013) ............................................................................................... 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
   603 U.S. 799 (2024) ............................................................................................. 15

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor,*
   45 F.4th 846 (5th Cir. 2022) ................................................................................ 15

*Dep't of Educ. v. Louisiana,*
   603 U.S. 866 (2024) .......................................................................................... 5, 12

*Duarte ex rel. Duarte v. City of Lewisville,*
   759 F.3d 514 (5th Cir. 2014) .................................................................................. 8

*Ellis v. Railway Clerks,*
   466 U.S. 435 (1984) ............................................................................................... 9

*FCC v. Prometheus Radio Project,*
   592 U.S. 414 (2021) ............................................................................................. 14

*FDA v. Alliance for Hippocratic Med.,*
   602 U.S. 367 (2024) ............................................................................................... 7

*Florida v. HHS,*
   739 F. Supp. 3d 1091 (M.D. Fla. 2024) ......................................................... passim

*Gonzales v. Oregon,*
   546 U.S. 243 (2006) ............................................................................................. 13

*Grand Trunk W. R. Co. v. Consol. Rail Corp.,*
   746 F.2d 323 (6th Cir. 1984) ........................................................................... 16, 17

*Inhance Techs., LLC v. EPA,*
   96 F.4th 888 (5th Cir. 2024) .................................................................................. 9

*Iowa v. Council on Envtl. Quality,*
    --- F. Supp.3d ---, 2025 WL 598928 (D.N.D. Feb. 3, 2025) ....................................16

*Kansas v. U.S. Dep't of Educ.,*
    739 F. Supp. 3d 902 (D. Kan. 2024) ...............................................................4

*Kentucky v. EPA,*
    123 F.4th 447 (6th Cir. 2024) ...............................................................15, 16

*Knox v. Serv. Emps. Int'l Union, Local,*
    1000, 567 U.S. 298 (2012) ...............................................................8

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ...............................................................9

*Louisiana ex rel. Murrill v. U.S. Dep't of Educ.,*
    No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024) ....................................5

*Louisiana v. U.S. Dep't of Educ.,*
    737 F. Supp. 3d 377 (W.D. La. 2024) ...............................................................4

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...............................................................8

*McNaughton v. Johnson,*
    242 U.S. 344 (1917) ...............................................................13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ...............................................................14

*Nat'l Ass'n for Gun Rights, Inc. v. Garland,*
    741 F. Supp. 3d 568 (N.D. Tex. 2024) ...............................................................17

*Perez v. Mortgage Bankers Ass'n,*
    575 U.S. 92 (2015) ...............................................................8, 15

*Powell v. McCormack,*
    395 U.S. 486 (1969) ...............................................................17

*Restaurant L. Ctr. v. U.S. Dep't of Labor,*
    120 F.4th 163 (5th Cir. 2024) ...............................................................2

*Tennessee v. Cardona,*
    --- F. Supp. 3d ---, 2025 WL 63795 (E.D. Ky. Jan. 9, 2025) ....................................5, 16, 17

*Tennessee v. Cardona,*
    737 F. Supp. 3d 510 (E.D. Ky. 2024) ...............................................................4, 16

*Tennessee v. Cardona*,
No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024)........................................................12

*Tennessee v. EEOC*,
129 F.4th 452 (8th Cir. 2025) ...............................................................................................2

*Tex. Med. Ass'n v. HHS*,
No. 6:23-cv-59-JDK, 2023 WL 4977746 (E.D. Tex. Aug. 3, 2023) ...................................16

*Texas v. Becerra*,
739 F. Supp. 3d 522 (E.D. Tex. 2024) ...........................................................4, 10, 11, 13

*Texas v. Cardona*,
743 F. Supp. 3d 824 (N.D. Tex. 2024) .................................................................9, 16, 17

*Texas v. DHS*,
756 F. Supp. 3d 310 (E.D. Tex. 2024) ...................................................................................17

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) ...................................................................................................16

*U.S. Forest Serv. v. Cowpasture River Preservation Ass'n*,
590 U.S. 604 (2020) ................................................................................................................13

*United Steel v. Mine Safety & Health Admin.*,
925 F.3d 1279 (D.C. Cir. 2019).............................................................................................15

**Statutes**

5 U.S.C. § 703 ..............................................................................................................................16

5 U.S.C. § 706 ......................................................................................................................10, 15

20 U.S.C. § 1681(a) .......................................................................................................................3

28 U.S.C. § 2201(a) .....................................................................................................................16

28 U.S.C. § 2202 ..........................................................................................................................17

42 U.S.C. § 1396a(a)(4)...............................................................................................................12

42 U.S.C. § 1397aa(a) .................................................................................................................12

42 U.S.C. § 18114........................................................................................................................14

42 U.S.C. § 18116(a) ........................................................................................................3, 4, 10

42 U.S.C. § 18122(3) .............................................................................................................14, 15

**Rules**

Fed. R. Civ. P. 57 ................................................................................................................16

**Regulations**

*Nondiscrimination in Health Programs and Activities*,
  89 Fed. Reg. 37,522 (May 6, 2024) ............................................................1, 3, 12, 13

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*,
  89 Fed. Reg. 33,474 (Apr. 29, 2024) ............................................................................4

**Other Authorities**

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*,
  Exec. Order No. 14,168, 90 Fed. Reg. (Jan. 20, 2025) ....................................... 6, 12

*Protecting Children from Chemical and Surgical Mutilation*,
  Exec. Order No. 14,187, 90 Fed. Reg. 8771 (Jan. 28, 2025). ............................6

## INTRODUCTION

By adopting a rule that distorts the term "sex" to include gender identity, *see* HHS, *Nondiscrimination in Health Programs and Activities*, 89 Fed. Reg. 37,522 (May 6, 2024) ("2024 Rule"), the U.S. Department of Health and Human Services ("HHS") exceeded its authority under Section 1557 of the Affordable Care Act ("ACA").  This Court and two others thus entered preliminary relief against HHS's 2024 Rule to stop it from taking effect and irreparably harming Plaintiff States.  Since this Court's July 2024 ruling, the case against the 2024 Rule's legality has only grown stronger.  A series of courts have reasoned that Title IX's prohibition on "sex" discrimination, which Section 1557 incorporates, does not authorize rules saddling regulated parties with unprecedented gender-identity mandates.  And the federal government now concurs that statutory references to "sex" do not include the concept of gender identity.

As this Court already detailed, the 2024 Rule is unlawful.  The question here is whether the Court should indefinitely leave the 2024 Rule on the books or instead issue a final judgment deeming the 2024 Rule's gender-identity provisions unlawful.  Previously, HHS sought to extend the Court's preliminary relief pending HHS's potential, future action on the rule.  Defs.' Notice, ECF No. 59 (stricken by Mar. 18, 2025 Order).  This Court has rightly rebuffed that path to regulatory purgatory.  Now, HHS agrees this case can move forward—but apparently intends to seek dismissal of Plaintiff States' claims.  *See* Joint Status Report Submitted to M.J. Rath April 11, 2025.  That resolution should be a nonstarter too; it would leave the 2024 Rule's unlawful gender-identity mandates on the federal law books as-is, thereby inflicting continued harm on Plaintiff States.  Instead, Plaintiff States offer a clear route to rectify the 2024 Rule's unlawful mandates and provide much-needed regulatory certainty:  This Court should grant summary judgment to the Plaintiff States and enter final relief against the 2024 Rule for the same reasons set out in its preliminary injunction opinion.

There is no jurisdictional barrier to entering final relief for Plaintiff States.  HHS's ripeness,

standing, and preclusion arguments fail for reasons Plaintiff States already addressed and multiple courts have uniformly rejected. And the Plaintiff States' case otherwise remains justiciable. Again, the 2024 Rule remains a part of federal law whose unlawful gender-identity provisions are currently dormant only by virtue of preliminary rulings. This ensures a controversy persists despite any voluntary about-face by HHS: As parties subject to the 2024 Rule, Plaintiff States are subject to regulatory, sovereignty, and compliance harms "that a judgment" vacating the 2024 Rule "will redress." *Tennessee v. EEOC*, 129 F.4th 452, 457 (8th Cir. 2025) (quotation omitted). Plaintiff States' declaratory claim, which would provide forward-looking relief under Section 1557 itself, likewise remains live.

On the merits, there's no need to reinvent the wheel. The Court exhaustively explained why the 2024 Rule exceeds HHS's "statutory authority by applying the *Bostock* holding to Section 1557's incorporation of Title IX." Mem. Op. & Order Granting Pls.' Mot. for Expedited Ruling, § 705 Relief, and a Prelim. Inj., ECF No. 29 ("Op."), at 23. Other courts have since agreed. Reaffirming this Court's prior analysis is all that is needed to issue final relief rejecting the 2024 Rule's gender-identity provisions. But for the sake of completeness, Plaintiff States renew their alternative merits arguments under the ACA and the Administrative Procedure Act ("APA").

Because the 2024 Rule exceeds HHS's statutory authority, vacatur of the offending provisions is the "default" remedy. *Restaurant L. Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163, 177 (5th Cir. 2024) (quotation omitted). Vacatur follows here because the 2024 Rule's flaws are irremediable, and invalidating the gender-identity mandates aligns with, rather than upends, the status quo. The Court also should issue declaratory relief, as the APA permits, to protect Plaintiff States' rights under Section 1557 and Title IX.

In short, both the 2024 Rule and its illegal reading of Section 1557 remain operative. The Court should resolve the present controversy by granting summary judgment to Plaintiff States against HHS's 2024 Rule and issuing the legally authorized relief of vacatur and a declaratory judgment.

## BACKGROUND

Plaintiff States' preliminary injunction brief, ECF No. 21 at 2-10, and this Court's prior opinion, ECF No. 29 at 2-9, set out much of the relevant statutory and regulatory background. Rather than repeat that material here, Plaintiff States primarily recount a few post-preliminary injunction legal and factual developments relevant to their motion for summary judgment.

_The 2024 Rule and this Court's preliminary injunction holding._ As the Court knows, the dispute in this case centers on Section 1557 of the ACA, which prohibits discrimination in "any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). Section 1557 in turn incorporates Title IX's bar on discrimination "on the basis of sex." *See id.*; 20 U.S.C. § 1681(a) (prohibiting discrimination "on the basis of sex" in education context). No other provision in the ACA bars sex discrimination, and no provision of Section 1557 mentions gender identity.

The 2024 Rule nonetheless asserts that Title IX's reference to "sex" discrimination, as incorporated by Section 1557, also prohibits discrimination on the bases of gender identity and sexual orientation. From there, the 2024 Rule imposes a series of controversial mandates that outlaw (among other things) maintaining sex-segregated healthcare facilities and refusing to provide or subsidize via insurance so-called "gender-affirming care"—*i.e.*, irreversible hormonal and surgical interventions for purposes of "gender transition." 89 Fed. Reg. at 37,699, 37,701; *see also id.* at 37,691 (requiring Medicaid service contracts to prohibit policies or practices with a discriminatory "effect" on "gender identity"). As the lone support for the 2024 Rule's gender-identity provisions, HHS has cited *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020), which held that Title VII's distinct language prohibits an employer for terminating an employee "simply for being … transgender," *id.* at 650.

But as the Court's preliminary injunction opinion explained, "[t]he *Bostock* Title VII analysis" is "inapplicable" to Title IX for several reasons. Op. 19. Those include, among others, the two statutes' distinct text and structure, that Title IX "presumes sexual dimorphism" throughout its text

3

and implementing regulations, Fifth Circuit precedent rejecting that courts can "blindly apply Title VII standards to the Title IX context," and the distinct clear-statement rules that govern Title IX as Spending Clause legislation.  *See generally* Op. 11-23 (citations omitted).  Because there is "no basis for applying *Bostock*'s Title VII analysis to Section 1557's incorporation of Title IX," this Court determined that HHS likely "exceeded its statutory authority" in promulgating the 2024 Rule.  Op. 22.  The other two courts to grant preliminary relief prior to the 2024 Rule's effective date did so for substantially the same reasons.  *See Texas v. Becerra*, 739 F. Supp. 3d 522, 532 (E.D. Tex. 2024) ("[T]he Final Rule conflicts with the ACA and Title IX and therefore violates the APA."); *Florida v. HHS*, 739 F. Supp. 3d 1091, 1104 (M.D. Fla. 2024) ("Title IX does not address discrimination on the basis of gender identity," so the 2024 Rule "appears to be a dead letter in the Eleventh Circuit").

*Additional Title IX caselaw.*  When this Court issued its preliminary injunction ruling, challenges to the Department of Education's 2024 Title IX rule[1] were working their way through various courts. By early July 2024, multiple district courts had held that the 2024 Title IX rule was likely invalid insofar as it read Title IX's prohibition on "sex" discrimination to extend coverage to discrimination on the basis of sexual orientation and gender identity.  *See, e.g.*, *Tennessee v. Cardona*, 737 F. Supp. 3d 510 (E.D. Ky. 2024) (*Tennessee I*); *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377 (W.D. La. 2024); *Kansas v. U.S. Dep't of Educ.*, 739 F. Supp. 3d 902 (D. Kan. 2024).  That reasoning directly bears on HHS's 2024 Rule, *see* 42 U.S.C. § 18116(a) (incorporating Title IX into Section 1557), which advances the same *Bostock*-based justification and carries the same consequences of overhauling regulated entities' longstanding practice of separating intimate facilities and other programs by sex, *cf.* Op. 5 n.1 (citing *Tennessee I*, 737 F. Supp. 3d at 521-27).

---

[1] *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024).

By now, nearly every court to consider the 2024 Title IX rule has concluded that it is (or is likely to be) unlawful. *See Tennessee v. Cardona*, --- F. Supp. 3d ---, 2025 WL 63795, at *7 (E.D. Ky. Jan. 9, 2025) (*Tennessee II*) (collecting cases). The core reason: Title IX's reference to "sex" does not authorize the federal government to prohibit gender-identity discrimination or impose requirements that invalidate longstanding sex-separation practices in intimate facilities and other programs, like sports and sexual education, where the sexes' biological differences matter. The Fifth Circuit, for its part, declined to grant the federal government's request to stay a preliminary injunction of the 2024 Title IX rule's central gender-identity provisions. *See Louisiana ex rel. Murrill v. U.S. Dep't of Educ.*, No. 24-30399, 2024 WL 3452887, at *1 (5th Cir. July 17, 2024).

The U.S. Supreme Court then did the same thing. *See Dep't of Educ. v. Louisiana*, 603 U.S. 866 (2024). Both the majority and dissenting opinion agreed that the States "were entitled to preliminary injunctive relief" against the 2024 Title IX rule's gender-identity-based provisions. *See id.* at 867; *id.* at 868-69 (Sotomayor, J., dissenting in part). That was so even though the Solicitor General had contested the injunctions on the basis that *Bostock* applies to Title IX. U.S. App. for Partial Stay 21-22, 28-38, *id.* (U.S. July 22, 2024). The Supreme Court's statement, a panel of the Eleventh Circuit later noted, meant it "had to have found that all the requirements for a preliminary injunction were met, including likelihood of success on the merits" of the Title IX question. *Alabama v. Cardona*, No. 24-12444, 2024 WL 3981994, at *1 n.1 (11th Cir. Aug. 22, 2024).

Two courts then vacated the 2024 Title IX rule. *Tennessee II*, 2025 WL 63795, at *6-7; Order, ECF No. 86, *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-461-O (N.D. Tex. Feb. 19, 2025). The *Carroll ISD* decision came in February 2025 following the parties' agreement that the Department of Education's changed stance on Title IX did not render the challenge to the 2024 Title IX regulation moot. Joint Status Report 1, ECF No. 85, *id.* (N.D. Tex. Feb. 17, 2025). The Department has declined to appeal the vacatur decisions; other challenges to the 2024 Title IX rule remain

pending.

  *Federal government's change in position regarding the meaning of "sex" discrimination*.  Upon assuming office on January 20, 2025, President Trump issued Executive Orders that depart from the positions HHS has previously advanced here.  One Executive Order provides that the "Executive Branch will enforce all sex-protective laws to promote th[e] reality" that there are "two sexes, male and female." *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (*Defending Women* E.O.).  That order rejects incorporating concepts of "gender identity" into any "interpretation of and application of Federal law and administration policy" and disagrees that *Bostock* "requires gender identity-based access to single-sex spaces under, for example, Title IX."  *Id.* at 8615-16.  Under the order, "each agency shall assess grant conditions and grantee preferences to ensure grant funds do not promote gender ideology."  *Id.* at 8616.

  A few weeks later, the President issued a second Executive Order that instructs that "it is the policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another."  *Protecting Children from Chemical and Surgical Mutilation*, Exec. Order 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025).  The order dismisses guidance from the World Professional Association for Transgender Health ("WPATH")—on which the 2024 Rule relies—as "lack[ing] scientific integrity."  *Id.* at 8771; *see also Florida*, 739 F. Supp. 3d at 1113-16 (discussing flaws in WPATH's and 2024 Rule's scientific support).  And it directs HHS to "take all appropriate actions to end the chemical and surgical mutilation of children," including under Section 1557.  *Id.* at 8772.

  *Further procedural history*.  HHS sought and was granted dismissal of its three pending appeals of the preliminary injunctions against the 2024 Rule.  *See* Joint Status Report ¶ 8, ECF No. 51, *Texas v. Kennedy*, No. 6:24-cv-211 (E.D. Tex. Apr. 16, 2025) (*Texas* JSR).  HHS then sought an indefinite stay of this case in a filing this Court struck as procedurally improper.  *See* Text Order (Mar. 18, 2025).

Following a status conference, the parties conferred and reached agreement that this case can proceed to resolution through dispositive-motion practice.  *See* Joint Status Report Submitted to M.J. Rath (Apr. 11, 2025).

## ARGUMENT

This Court maintains jurisdiction to review the 2024 Rule, which exceeds HHS's statutory authority under Section 1557 for the reasons set out in this Court's preliminary injunction opinion.  A holding reaffirming that statutory analysis is sufficient to invalidate the 2024 Rule's gender-identity provisions.  For completeness, Plaintiff States also renew their alternative arguments that the 2024 Rule unlawfully intrudes on Plaintiff States' authority to regulate the medical field and is arbitrary and capricious.  Because the 2024 Rule's core legal defects could not be remedied on remand, this Court should grant the default remedy of vacating the problematic portions of the 2024 Rule.  Entry of declaratory relief is also appropriate to settle Plaintiff States' going-forward rights under Section 1557.

## I.    Plaintiff States' Challenge Remains Live and Justiciable.

**A.**  Previously, HHS asserted that Plaintiff States lacked standing, that this challenge was not ripe, and that other statutes precluded this Court's review.  To the extent HHS intends to renew those arguments, they fail for reasons Plaintiff States explained in their preliminary injunction briefing, *see* PI Reply 1-3, ECF No. 26, and this Court and others addressed in the preliminary injunction opinions, *see* Op. 9-10 (concluding that Plaintiff States have standing); *see also Florida*, 739 F. Supp. 3d at 1101-04 (rejecting HHS's standing, ripeness, and preclusion arguments).

As this Court concluded with respect to standing, in particular, Plaintiff States have standing as entities directly regulated by the 2024 Rule.  Op. 9-10 (quoting *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024)).  The rule that "standing is usually easy to establish" for directly regulated parties, *Hippocratic Med.*, 602 U.S. at 382, continues to govern:  The 2024 Rule remains a binding part of federal law and will continue to exist on the books unless vacated or rescinded through required

APA channels. So long as the 2024 Rule is operative, it will inflict concrete injuries that confer standing on Plaintiff States. *See* Op. 9-10; PI Reply 1-3 (detailing regulatory, sovereignty, and compliance injuries); Pls.' Decls., ECF Nos. 20-1 to 20-10. An order vacating the 2024 Rule's gender-identity provisions would redress those injuries.

**B.** Any change in position on gender-identity issues does not deprive the Court of jurisdiction. The "Supreme Court's 'longstanding rule' is that standing 'is to be assessed under the facts existing when the complaint is filed.'" *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 n.3 (5th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992)). So a new HHS position that "exist[s] at the time" this "motion for summary judgment" is filed does not bear on whether Plaintiff States had standing to seek vacatur and further relief at the outset of this action. *Id.*

Nor are the recent presidential position shifts the kind of development that could strip this Court of jurisdiction to address the 2024 Rule. It is true that Executive Orders now reject several positions HHS previously advanced in this litigation—including that "sex" in Title IX covers gender identity. *Supra* p. 6. But those policy changes cannot disappear the 2024 Rule from the body of binding federal regulations. As HHS has acknowledged, *see Texas* JSR, *supra*, actual rescindment of the 2024 Rule could come only via a future HHS action subject to whatever rulemaking procedures the APA requires, *cf. Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 101 (2015). Over the years that process plays out,[2] Plaintiff States would be left to rely on an indefinite extension of this Court's preliminary relief order. But Article III negates justiciability when it is "impossible" for courts to grant effectual relief. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). It does not require deferring resolution of a cognizable here-and-now controversy to some unknown date pending contingencies that may never occur. For good reason, then, the Department of Justice has acknowledged that similar

---

[2] *Cf. Walker v. Azar*, No. 1:20-cv-2834 (E.D.N.Y.) (case challenging 2020 Rule that repealed portions of 2016 Rule remains stayed).

challenges to still-live regulations were "not moot" despite changes in Executive Branch policies; courts have agreed and proceeded to vacatur. *See supra* p. 5 (discussing *Carroll ISD*).

The bottom line: While the 2024 Rule remains operative, Plaintiff States retain "a concrete interest … in the outcome" they request—setting aside and declaring the 2024 Rule's gender-identity provisions as invalid. *Ellis v. Railway Clerks,* 466 U.S. 435, 442 (1984). The case remains live and justiciable. Indeed, because providing "complete relief" involves entry of declaratory remedies about the meaning of Section 1557 that would govern going forward, *Texas v. Cardona,* 743 F. Supp. 3d 824, 897 (N.D. Tex. 2024); *see infra* p. 16-17, Plaintiff States retain a concrete interest in this dispute no matter the status of the 2024 Rule or their entitlement to vacatur.

## II.    The 2024 Rule Exceeds HHS's Statutory Authority.

Agencies' "power to act and how they are to act is authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). As this Court previously noted, the Supreme Court's decision in *Loper Bright* means courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." Op. 12 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024)). Courts assess statutory meaning by considering "the statute's language as well 'as the language and design of the statute as a whole.'" Op. 12 (quoting *Inhance Techs., LLC v. EPA*, 96 F.4th 888, 893 (5th Cir. 2024)).

HHS's 2024 Rule exceeds the agency's statutory authority along two independent dimensions. *First*, as this Court held in its preliminary injunction opinion, the 2024 Rule impermissibly interprets the meaning of "sex" in Title IX, as incorporated by Section 1557. Along similar lines, the 2024 Rule unlawfully reads gender-identity requirements into statutes governing Medicaid and the Children's Health Insurance Program ("CHIP"). *Second*, the 2024 Rule unlawfully regulates medical practice by imposing rules that dictate how health care entities must run facilities and provide patient care. Both grounds provide a basis for setting aside the 2024 Rule's gender-identity provisions as invalid.

**A. The 2024 Rule unlawfully extends "sex" discrimination to gender identity.**

*Title IX and Section 1557.*  Section 1557 of the ACA incorporates the anti-discrimination provisions of "title IX on the Education Amendments of 1972."  42 U.S.C. § 18116(a).  Citing that provision and the *Bostock* decision, the 2024 Rule creates a litany of unprecedented gender-identity mandates that apply to Plaintiff States as federally funded healthcare entities.  *See supra* p. 3.

To hold the 2024 Rule's gender-identity provisions unlawful, this Court need do no more than re-apply its preliminary injunction reasoning that *Bostock*'s holding extending Title VII to transgender status does not apply to Title IX's distinct "on the basis of sex" language.  As this Court summed up its statutory conclusion:

> [T]he Court has found no basis for applying *Bostock*'s Title VII analysis to Section 1557's incorporation of Title IX.  HHS acted unreasonably when it relied on *Bostock*'s analysis in order to conflate the phrase "on the basis of sex" with the phrase "on the basis of gender identity."  Specifically, the *Bostock* holding did not "sweep beyond Title VII to other federal or state laws that prohibit sex discrimination."  *Bostock*, 590 U.S. at 681.  Interpreting the word "sex" to include gender identity would create contradictions and ambiguity within Title IX and its regulations.  And it is impossible to determine what Section 1557 meant by "the ground prohibited under . . . Title IX" without considering what type of discrimination was prohibited by Title IX.  Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim that HHS exceeded its statutory authority by applying the *Bostock* holding to Section 1557's incorporation of Title IX in its May 2024 Rule.

Op. 22.  Nothing about the 2024 Rule or *Bostock*'s limited holding has changed.  So that prior analysis should govern here as before.  And it alone warrants invalidating the 2024 Rule on the ground that the gender-identity provisions exceed HHS's statutory authority.  *See* 5 U.S.C. § 706(2)(C).

That holding followed from a series of statutory points that the Plaintiff States raised and this Court thoroughly addressed.  *See* PI Br. 11-17, 20-21; PI Reply 3-6; Op. 11-23.  Plaintiff States renew all of those arguments here.  To highlight:

- **Text.**  The "'ordinary meaning' of 'sex' in Title IX clearly refers to the biological binary of 'male' and 'female.'"  PI Br. 11 (quoting *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) (en banc)); *accord* Op. 13-15 (agreeing that "sex" as used in Title IX refers to "immutable characteristic" encompassing "physiological differences between men and women" (citation omitted)); *Florida*, 739 F. Supp. 3d at 1104-05; *Texas*, 739 F. Supp. 3d at 533-34.  Further, "Congress used different causation language in Title

10

IX ('on the basis of sex')," supporting that "*Bostock*'s ruling concerning Title VII does not apply to Title IX." Op. 16; *accord Texas*, 739 F. Supp. 3d at 535.

- **Structure.** Throughout, Title IX "allows sex-based distinctions when the sexes are not similarly situated." PI Br. 11. The same goes for Title IX's "original implementing regulations." *Id.* at 12. Reading "sex" to encompass "gender identity" would render many of these "carve-out[s]" meaningless by covering "both sex and gender identity when gender identity does not match sex." Op. 15 (quoting *Adams*, 57 F.4th at 814); *see id.* at 20-22 (noting that Title IX's statutory provisions and "regulations explicitly permit, and sometimes even require, consideration of sex"); *Florida*, 739 F. Supp. 3d at 1104-05; *Texas*, 739 F. Supp. 3d at 534-35. Simply put, "Title VII is a vastly different statute from Title IX." Op. 18 (cleaned up).

- **Spending Clause.** Unlike Title VII, Title IX and Section 1557 "were enacted pursuant to Congress's authority under the Spending Clause." Op. 18; *see* PI Br. 20-22. As such, they must satisfy the Spending Clause clear-statement rule by providing "clear statements prohibiting discrimination on the basis of gender identity." Op. 19. The statutes, though, "only refer to 'sex,'" which "even the *Bostock* majority agreed" was distinct from gender identity. *Id.*; *accord Florida*, 739 F. Supp. 3d at 1105.

- **Precedent.** This Court declined to adopt other circuits' reasoning, mirrored by HHS in the 2024 Rule, reflexively applying *Bostock* to Title IX. Op. 17. Rightly so "because the Fifth Circuit 'does not unquestionably apply Title VII caselaw to Title IX." Op. 19 (citation and brackets omitted); *see id.* at 19-20 (collecting circuit caselaw). Indeed, *Bostock* "expressly limited its holding to Title VII claims." Op. 14 (quoting 590 U.S. at 681); *see Texas*, 739 F. Supp. 3d at 535 (noting *Bostock*'s "limited" holding).

- **Similarly situated requirement.** Even if *Bostock* applied, its discrimination holding only prohibits "treating [an] individual worse than others who are similarly situated." PI Br. 14 (quoting *Bostock*, 590 U.S. at 657). The sexes' biological differences mean they are not similarly situated when it comes to private spaces in medical facilities and certain medical treatments. *Id.* at 14-16 (collecting cases). In those situations, "there is no discrimination" when Plaintiff States take biological differences into account. *Id.* at 15; PI Reply 4; *accord Florida*, 739 F. Supp. 3d at 1106-07 (discussing HHS's "similarly situated" problem).

As before, those reasons and the additional bases in Plaintiff States' preliminary injunction briefs demonstrate that the 2024 Rule's gender-identity provisions exceed HHS's statutory authority.

If anything, the case for this Court's original analysis has only grown stronger. As noted, a series of decisions since this Court's ruling have agreed that Title IX's reference to "sex" does not encompass discrimination based on gender identity. *See supra* p. 5. The Fifth, Sixth, and Eleventh

Circuits[3] have affirmed or entered injunctions of the 2024 Title IX rule, which purported to extend Title IX to gender identity in the educational context. The U.S. Supreme Court declined to set aside two injunctions of the 2024 Title IX rule in a ruling where "all Members of the Court" agreed the States "were entitled" to preliminary relief from gender-identity mandates. *Louisiana v. Dep't of Educ.*, 603 U.S. at 867. The Executive Branch also now acknowledges that "[s]ex" is not a synonym for and does not include the concept of "gender identity," and that *Bostock* does not govern Title IX. *Defending Women* E.O., 90 Fed. Reg. at 8615-16.

This Court got the statutory question right the first time: Neither Title IX nor Section 1557 authorizes the 2024 Rule's gender-identity provisions. That ground is alone sufficient to enter summary judgment for Plaintiff States on the issue of HHS's statutory authority.

*Medicaid and CHIP statutes.* The 2024 Rule also amends Medicaid and CHIP contracting rules to require States to prohibit entities that deliver services from using any policy or practice that has the "effect of discriminating" based on an individual's "gender identity." 89 Fed. Reg. at 37,691. According to HHS, these changes to the CMS regulations are authorized by provisions of the Social Security Act ("SSA"), another Spending Clause statute. HHS previously relied, in particular, on the SSA requirement that State plans provide "such methods of administration … as are found by the Secretary to be necessary for the proper and efficient operation of the plan." 42 U.S.C. § 1396a(a)(4). HHS also cited a precatory provision stating that the "purpose of" the CHIP program "is to provide funds to States to enable them to initiate and expand the provision of child health assistance … in an effective and efficient manner." 42 U.S.C. § 1397aa(a).

HHS's reliance on those statutes fails for the reasons just given and set out further in Plaintiff

---

[3] *See Alabama*, 2024 WL 3981994, at *4 ("[I]t is certainly highly likely that the Department's new regulation defining discrimination 'on the basis of sex' to include 'gender identity' is contrary to law and 'in excess of … statutory authority.'"); *Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *2 (6th Cir. July 17, 2024) ("As we see it, the district court likely concluded correctly that the Rule's definition of sex discrimination exceeds the Department's authority."); *Louisiana*, 2024 WL 3452887, at *1-3.

States' preliminary injunction brief, *see* PI Br. 19-20, as well as in the *Texas* and *Florida* preliminary injunction opinions, *see Texas*, 739 F. Supp. 3d at 536-37; *Florida*, 739 F. Supp. 3d at 1107-08. Dispositively for HHS, nothing in either cited provision grants "the authority to prohibit discrimination on the basis of gender identity—and effect the kind of sweeping social policy change the agencies attempt." *Texas*, 739 F. Supp. 3d at 537. Much less do those provisions' reference to "routine administrative tasks" authorize HHS's gender-identity mandates with the clarity needed to satisfy the Spending Clause clear-statement rule. *Florida*, 739 F. Supp. 3d at 1108; *cf.* Op. at 18-19. So to the extent the 2024 Rule imposes additional gender-identity-based obligations on Plaintiff States in their operation of Medicaid and CHIP programs, those provisions exceed HHS's statutory authority too.

### B. The 2024 Rule unlawfully regulates medical practice.

The 2024 Rule independently exceeds statutory limits on HHS's authority to interfere with the regulation of medical practice. PI Br. 17-19. States' traditional police powers have long included "regulat[ing] the practice of medicine." *McNaughton v. Johnson*, 242 U.S. 344, 348-49 (1917). If Congress "wishes to significantly alter the balance between federal and state power" to regulate medicine, it must use "exceedingly clear language," *U.S. Forest Serv. v. Cowpasture River Preservation Ass'n*, 590 U.S. 604, 622 (2020), not "muffled hints," *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006).

For reasons given, Section 1557 does not grant HHS *any* authority to coerce gender-identity-based changes in how Plaintiff States operate their healthcare facilities and programs or regulate the provision of medical care. *See supra* p. 10-12; Op. 18-19. Nor does the statute provide "clear language" needed to upend the States' traditional regulatory role. *U.S. Forest Serv.*, 590 U.S. at 622. That alone forecloses the 2024 Rule's attempt to overhaul healthcare by, *e.g.*, regulating the placement of persons in sex-separated facilities, *see* 89 Fed. Reg. at 37,593, requiring that providers ignore biological sex to avoid patient "distress," *see id.*, or mandating that doctors provide minors with gender-transition interventions like "hormone therapy, surgery, and other related services" in contravention of state law,

*see id.* at 37,535, 37,598, 37,701; *cf.* Compl. 32-40 (collecting state statutes).

Still worse for HHS, governing statutes conflict with the 2024 Rule's attempt to regulate the medical field in at least two ways. PI Br. 18-19. *First*, the ACA explicitly protects state tort laws from preemption. PI Br. 18 (citing 42 U.S.C. § 18122(3)). By mandating the provision of gender-intervention procedures as a condition of funding, the 2024 Rule thus forces providers to choose between continued federal funding or liability under state malpractice standards. *Second*, the ACA prohibits HHS from adopting any rule that "impedes timely access to health care services"; "interferes with communications regarding a full range of treatment options between the patient and the provider"; "restricts the ability of health care professionals to provide full disclosure of all relevant information to patients making health care decisions"; or "violates the principles of informed consent and the ethical standards of health care professionals." 42 U.S.C. § 18114(2)-(5). Yet the 2024 Rule would require providers to cede their reasoned medical judgment to the controversial positions of advocacy groups like WPATH, even if doing so would mislead patients about the efficacy and safety of these treatments. The statute prohibits HHS from commandeering medical care along the 2024 Rule's preferred ideological lines. *See* PI Br. 19.

**III.    The 2024 Rule Is Arbitrary and Capricious.**

On top of the 2024 Rule's statutory failings, it violates the APA's bar on arbitrary-and-capricious action. PI Br. 22. The APA requires agency decision-making to be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 417 (2021). Agency analysis cannot "run[] counter to the evidence before the agency" or "fail[] to consider an important aspect of the problem," and it must show a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The 2024 Rule flouts those requirements. It failed to adequately consider—or offer a reasoned explanation addressing—how the gender-identity provisions would undermine sound medical practice

by overriding providers' reasonable medical judgment about the efficacy and safety of gender inter-ventions. *See* Compl. ¶ 281 (discussing HHS's contrary conclusions in 2020 rule). Nor did HHS address the problem that its mandates would expose healthcare providers to malpractice liability. *Cf.* 42 U.S.C. § 18122(3). HHS further failed to "respond to significant comments" pointing out that the WPATH standards underpinning the 2024 Rule's mandates rest on weak evidence, *Mortg. Bankers Ass'n*, 575 U.S. at 96; *see* Compl. ¶ 173 (collecting comments); *see Florida*, 739 F. Supp. 3d at 1113-16. And it did not adequately account for the immense compliance burdens and costs associated with reorienting medical facilities and programs around evolving concepts of gender identity rather than sex. Those multifaceted failures in reasoning render the 2024 Rule arbitrary and capricious, and thus invalid. *See* 5 U.S.C. § 706(2)(A).

**IV.    Plaintiff States Are Entitled to Vacatur and Declaratory Relief.**

### A. This Court should vacate the unlawful provisions of the 2024 Rule.

Vacatur is the "default" remedy under the APA. *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859-60 (5th Cir. 2022); *see* 5 U.S.C. § 706(2); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829-32, 837-843 (2024) (Kavanaugh, J., concurring) (collecting authorities). A va-catur order—unlike an injunction and other *in personam* relief—would act on the 2024 Rule by denying the vacated provisions legally operative effect as to all. *See Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 951 (5th Cir. 2024), *cert. granted on other grounds*, 2025 WL 65913 (mem.) (U.S. Jan. 10, 2025).

Remand to the agency without vacatur is "rare." *Kentucky v. EPA*, 123 F.4th 447, 473 (6th Cir. 2024). Courts considering the propriety of such relief weigh "two factors: '(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur.'" *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (citation omitted). This case warrants no exception from the default vacatur rule.

*First*, the 2024 Rule suffers from fatal deficiencies. HHS's lack of statutory authority to adopt the offending provisions of the 2024 Rule means those provisions are "void *ab initio*," regardless of further agency justification. *Texas v. Cardona*, 743 F. Supp. 3d at 893; *see* Order 8, ECF No. 86, *Carroll Indep. Sch. Dist.*, No. 4:24-cv-461; *Iowa v. Council on Envtl. Quality*, --- F. Supp.3d ---, 2025 WL 598928, at *21-22 (D.N.D. Feb. 3, 2025). The same goes for the 2024 Rule's other substantive flaws, which could not be rectified on remand. *See Tennessee I*, 737 F. Supp. 3d at 570.

*Second*, HHS cannot show that vacatur of the 2024 Rule's gender-identity mandates "would have any unusually disruptive effects." *Kentucky v. EPA*, 123 F.4th at 473. "[E]very court presented with a challenge to the Final Rule has indicated that it is unlawful." *Tennessee II*, 2025 WL 63795, at *7. Vacatur would simply maintain the "status quo" and the decades' old understanding of Title IX's binary-sex-based meaning. *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). Such relief, more-over, would operate only on a portion of the 2024 Rule, leaving the non-offending provisions in place. *See generally* PI Mot. 1, ECF No. 20 (identifying affected provisions); PI Order 1, ECF No. 30 (same). Finally, "[b]ecause vacatur is the default remedy … defendants bear the burden to prove that vacatur is unnecessary." *Tex. Med. Ass'n v. HHS*, No. 6:23-cv-59-JDK, 2023 WL 4977746, at *13 (E.D. Tex. Aug. 3, 2023) (citation omitted). But HHS cannot credibly claim an interest in enforcing Section 1557 contrary to the President's Executive Orders. The equities favor vacatur.

### B. This Court also should grant declaratory relief to Plaintiff States.

Both the Declaratory Judgment Act and the APA contemplate declaratory relief that estab-lishes the legal rights of interested parties. 28 U.S.C. § 2201(a); 5 U.S.C. § 703. "The existence of another adequate remedy," moreover, "does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Declaratory relief is appropriate where, as here, a forward-looking declaration of rights will help parties by "clarifying and settling the legal relations in issue" and "afford relief from the uncertainty … and controversy giving rise to the proceeding." *Grand Trunk W. R. Co.*

*v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941)).

For nearly a decade now, there has been controversy over whether Section 1557 permits HHS to adopt gender-identity-based provisions. *See* Op. 6 (tracing interpretive dispute back to at least 2016). Plaintiff States have established that the answer is no—and thus that the 2024 Rule violates Section 1557 and Title IX. Op. 11-23; *see supra* p. 10-12. This Court should declare that the 2024 Rule is unlawful because Section 1557 and Title IX's prohibition on "sex" discrimination does not authorize the rule's extension of those protections to gender identity, as well as any other defects this Court opts to address. Such declarations are common in successful challenges to invalid agency rules. *See, e.g.*, *Tennessee II*, 2025 WL 63795, at \*7; *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, 741 F. Supp. 3d 568, 611 (N.D. Tex. 2024); *Texas v. DHS*, 756 F. Supp. 3d 310, 360-61 (E.D. Tex. 2024). And a declaration here would help "clarify[] and settl[e]" Plaintiff States' rights against any "future agency action" by HHS that rests on the view that the "antidiscrimination provisions of Title IX" and Section 1557 "include sexual orientation or gender identity." *Grand Trunk*, 746 F.2d at 326; *Texas v. Cardona*, 743 F. Supp. 3d at 894; *cf.* 28 U.S.C. § 2202; *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can … be used as a predicate to further relief, including an injunction.").

## CONCLUSION

The Court should grant Plaintiff States' motion for summary judgment. It should declare the 2024 Rule—and its challenged interpretation of Section 1557 and Title IX—unlawful. Vacatur of the unlawful portions of the 2024 Rule is warranted, as is entry of appropriate declaratory relief that settles Plaintiff States' rights under Section 1557.

Date: April 25, 2025                         Respectfully submitted,


**LYNN FITCH**
*Attorney General*

/s/ *Scott G. Stewart*
SCOTT G. STEWART
*Solicitor General*
Bar No. 106359
JUSTIN L. MATHENY
*Deputy Solicitor General*
Bar No. 100754
MISSISSIPPI ATTORNEY GENERAL'S OFFICE
P.O. Box 220
Jackson, Mississippi 39205
(601) 359-3680
scott.stewart@ago.ms.gov
justin.matheny@ago.ms.gov
*Counsel for Plaintiff State of Mississippi*


**STEVE MARSHALL**
*Attorney General*

/s/ *A. Barrett Bowdre*
A. BARRETT BOWDRE*
*Principal Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
(334) 242-7300
barrett.bowdre@AlabamaAG.gov
*Counsel for Plaintiff State of Alabama*


**JONATHAN SKRMETTI**
*Attorney General & Reporter*

/s/ *Steven J. Griffin*
STEVEN J. GRIFFIN
*Senior Counsel for Strategic Litigation*
Bar No. 103218
WHITNEY HERMANDORFER*
*Director of Strategic Litigation*
HARRISON GRAY KILGORE*
*Strategic Litigation Counsel and Assistant Solicitor General*
OFFICE OF THE TENNESSEE ATTORNEY GENERAL
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3491
steven.griffin@ag.tn.gov
whitney.hermandorfer@ag.tn.gov
harrison.kilgore@ag.tn.gov
*Counsel for Plaintiff State of Tennessee*


**CHRISTOPHER CARR**
*Attorney General*

/s/ *Stephen Petrany*
STEPHEN PETRANY*
*Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF GEORGIA
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov
*Counsel for Plaintiff State of Georgia*


18

**THEODORE E. ROKITA**
*Attorney General*

/s/ *James A. Barta*
JAMES A. BARTA*
*Solicitor General*
INDIANA ATTORNEY GENERAL'S OFFICE
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, Indiana 46204
(317) 232-0709
James.Barta@atg.in.gov
*Counsel for Plaintiff State of Indiana*


**RUSSELL COLEMAN**
*Attorney General*

/s/ *Justin D. Clark*
JUSTIN D. CLARK*
*Civil Chief*
LINDSEY R. KEISER*
*Assistant Attorney General*
COMMONWEALTH OF KENTUCKY
OFFICE OF THE ATTORNEY GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
justind.clark@ky.gov
lindsey.keiser@ky.gov
*Counsel for Plaintiff Commonwealth of Kentucky*


**MICHAEL T. HILGERS**
*Attorney General*

/s/ *Lincoln J. Korell*
LINCOLN J. KORELL*
*Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF
NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
lincoln.korell@nebraska.gov
*Counsel for Plaintiff State of Nebraska*


**KRIS W. KOBACH**
*Attorney General*

/s/ *Jay Rodriguez*
JAY RODRIGUEZ*
*Assistant Attorney General*
OFFICE OF THE KANSAS ATTORNEY GEN-
ERAL
120 SW 10th Ave.
Topeka, Kansas 66612
(785) 296-4733
jay.rodriguez@ag.ks.gov
*Counsel for Plaintiff State of Kansas*


**ELIZABETH B. MURRILL**
*Attorney General*

/s/ *Kelsey L. Smith*
KELSEY L. SMITH*
*Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GEN-
ERAL
1885 N. 3rd St.
Baton Rouge, Louisiana 70802
(225) 428-7432
smithkel@ag.louisiana.gov
*Counsel for Plaintiff State of Kansas*


**DAVE YOST**
*Attorney General*

/s/ *T. Elliot Gaiser*
T. ELLIOT GAISER*
*Solicitor General*
OFFICE OF THE OHIO ATTORNEY GENERAL
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Thomas.Gaiser@ohioago.gov
*Counsel for the State of Ohio*

19

**GENTNER DRUMMOND**
  *Attorney General*

/s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II*
  *Solicitor General*
OKLAHOMA OFFICE OF THE ATTORNEY
GENERAL
313 NE 21st Street
Oklahoma City, Oklahoma 73105
(405) 312-2451
Garry.Gaskins@oag.ok.gov
*Counsel for the State of Ohio*


**MARTY J. JACKLEY**
  *Attorney General*

/s/ *Jonathan K. Van Patten*
JONATHAN K. VAN PATTEN*
  *Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH DAKOTA
1302 E. Hwy. 14, Suite #1
Pierre, South Dakota 57501
(605) 773-3215
jonathan.vanpatten@state.sd.us
*Counsel for Plaintiff State of South Dakota*

**JOHN B. McCUSKEY**
  *Attorney General*

/s/ *Michael R. Williams*
MICHAEL R. WILLIAMS*
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF
WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvago.gov
*Counsel for Plaintiff State of Virginia*

**ALAN WILSON**
  *Attorney General*

/s/ *Thomas T. Hydrick*
THOMAS T. HYDRICK*
  *Assistant Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
OF SOUTH CAROLINA
1000 Assembly Street
Columbia, South Carolina 29201
(803) 734-4127
thomashydrick@scag.gov
*Counsel for Plaintiff State of South Carolina*


**JASON S. MIYARES**
  *Attorney General*

/s/ *Kevin M. Gallagher*
KEVIN M. GALLAGHER*
  *Principal Deputy Solicitor General*
VIRGINIA ATTORNEY GENERAL'S OFFICE
202 North 9th Street
Richmond, Virginia 23219
(804) 786-2071
kgallagher@oag.state.va.us
*Counsel for Plaintiff Commonwealth of Virginia*


*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, a true and correct copy of the foregoing document was filed via the Court's electronic filing system, which sent notice of filing to all counsel of record.

/s/ Steven J. Griffin
STEVEN J. GRIFFIN