**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| STATE OF TENNESSEE, *et al.*,<br><br>       Plaintiffs,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*,<br><br>       Defendants. | No. 1:24-cv-00161-LG-BWR |

**DEFENDANTS' BRIEF IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    I.     Statutory and Regulatory Background.........................................................................2

    II.    HHS's 2024 Rule Implementing § 1557..................................................................3

    III.   Procedural History .....................................................................................................5

LEGAL STANDARDS........................................................................................................5

ARGUMENT.......................................................................................................................6

    I.     Plaintiffs' Challenge Is Unripe..................................................................................6

    II.    Any Relief Should Be Limited.................................................................................10

        A.  Vacatur of the Challenged Provisions of the Rule Would Be Improper..............10

        B.  Plaintiffs Are Not Entitled to Declaratory Relief ................................................14

CONCLUSION...................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ................................................................................. 6, 14

*Arizona v. Biden,*
    40 F.4th 375 (6th Cir. 2022) ....................................................................... 11

*Associated Builders & Contractors of Tex., Inc. v. NLRB,*
    826 F.3d 215 (5th Cir. 2016) ......................................................................... 5

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006) .................................................................................... 13

*Bostock v. Clayton County,*
    590 U.S. 644 (2020) ...................................................................................... 1

*Braidwood Mgmt., Inc. v. Becerra,*
    104 F.4th 930 (5th Cir. 2024) ..................................................................... 12

*Brown & Root, Inc. v. Big Rock Corp.,*
    383 F.2d 662 (5th Cir. 1967) ....................................................................... 15

*California v. Texas,*
    593 U.S. 659 (2021) .................................................................................... 11

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
    98 F.4th 220 (5th Cir. 2024) ................................................................. 12, 13

*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023) ....................................................................... 11

*Coffman v. Breeze Corp.,*
    323 U.S. 316 (1945) .................................................................................... 15

*Ctr. for Individual Freedom v. Carmouche,*
    449 F.3d 655 (5th Cir. 2006) ......................................................................... 5

*Daimler Chrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .................................................................................... 13

*Data Mkg. P'ship, LP v. U.S. Dep't of Labor,*
    45 F.4th 846 (5th Cir. 2022) ....................................................................... 11

*Ellis v. Railway Clerks,*
    446 U.S.  (1984) ........................................................................................... 9

*Gill v. Whitford*,
    585 U.S. 48 (2018) ...................................................................................... 13

*Grand Trunk W.R. Co. v. Consol. Rail Corp.*,
    746 F.2d 323 (6th Cir. 1984) ...................................................................... 14

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988) .................................................................................... 13

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
    567 U.S. 298 (2012) ...................................................................................... 9

*Laufer v. Mann Hosp., L.L.C.*,
    996 F.3d 269 (5th Cir. 2021) ........................................................................ 5

*Life Partners, Inc. v. Life Ins. Co. of N. Am.*,
    203 F.3d 324 (5th Cir. 1999) ...................................................................... 15

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) ........................................................................ 7

*Madsen v. Women's Health Center, Inc.*,
    512 U.S. 753 (1994) .............................................................................. 13, 14

*Middle S. Energy, Inc. v. New Orleans*,
    800 F.2d 488 (5th Cir.1986) .......................................................................... 7

*Monk v. Huston*,
    340 F.3d 279 (5th Cir. 2003) ........................................................................ 7

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .................................................................................... 15

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
    538 U.S. 803 (2003) ............................................................................. *passim*

*Nuziard v. Minority Bus. Dev. Agency*,
    721 F. Supp. 3d 431 (N.D. Tex. 2024) ................................................... 12, 16

*Ohio Forestry Ass'n v. Sierra Club*,
    523 U.S. 726 (1998) ...................................................................................... 8

*Orix Credit All., Inc. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ................................................................... 7, 14

*Pennzoil Co. v. FERC*,
    645 F.2d 394 (5th Cir. 1981) ..................................................................... 7, 9

*Reno v. Flores,*
  507 U.S. 292 (1993) .................................................................................................6

*Sample v. Morrison,*
  406 F.3d 310 (5th Cir. 2005) ...................................................................................6

*Thomas v. Union Carbide Agric. Prods. Co.,*
  473 U.S. 568 (1985) ..............................................................................................7, 8

*Toilet Goods Ass'n, Inc. v. Gardner,*
  387 U.S. 158 (1967) .................................................................................................8

*United States v. Rahimi,*
  602 U.S. 680 (2024) .................................................................................................6

*United States v. Texas,*
  599 U.S. 670 (2023) ............................................................................................11, 15

*United Transp. Union v. Foster,*
  205 F.3d 851 (5th Cir. 2000) .................................................................................10

*Util. Comm'rs v. FERC,*
  964 F.3d 1177 (D.C. Cir. 2020) ..............................................................................6

*Villas at Parkside Partners v. City of Farmers Branch,*
  577 F. Supp. 2d 880 (N.D. Tex. 2008) ..................................................................14

**Statutes**

5 U.S.C. § 703 .............................................................................................................11

5 U.S.C. § 706(2) ........................................................................................................11

20 U.S.C. § 1682 .......................................................................................................2, 3

20 U.S.C. § 1683 .........................................................................................................10

42 U.S.C. § 1396a .........................................................................................................5

42 U.S.C. § 1397aa .......................................................................................................5

42 U.S.C. § 2000d-1 .....................................................................................................2

42 U.S.C. § 18116(a) ...............................................................................................2, 10

**Regulations**

42 C.F.R. § 438.3 ..................................................................................................*passim*

42 C.F.R. § 438.206 ............................................................................................. 11, 13

42 C.F.R. § 440.262 ............................................................................................. 11, 13

42 C.F.R. § 460.98 ............................................................................................... 11, 13

42 C.F.R. § 460.112 ............................................................................................. 11, 13

45 C.F.R. § 80.6 ............................................................................................................ 2

45 C.F.R. § 80.7 ................................................................................................... 2, 3, 10

45 C.F.R. § 80.8 ................................................................................................... 2, 3, 10

45 C.F.R. § 80.9 ........................................................................................................ 2, 3

45 C.F.R. § 80.10 ......................................................................................................... 2

45 C.F.R. § 80.11 ................................................................................................... 2, 10

45 C.F.R. § 86.71 ......................................................................................................... 2

45 C.F.R. § 92.2(c) ..................................................................................................... 13

45 C.F.R. § 92.101 ............................................................................................... *passim*

45 C.F.R. § 92.206 ............................................................................................... *passim*

45 C.F.R. § 92.207 ............................................................................................... *passim*

Nondiscrimination in Health Programs and Activities,
    87 Fed. Reg. 47,824 (Aug. 4, 2022) ...................................................................... 5

Nondiscrimination in Health Programs and Activities,
    89 Fed. Reg. 37,522 (May 6, 2024) ............................................................... 6, 8, 10

## INTRODUCTION

Last year, the U.S. Department of Health and Human Services ("HHS") issued a rule implementing the nondiscrimination requirements of § 1557 of the Affordable Care Act, relying on the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020). *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024) (the "Rule"). The Rule has since been challenged in multiple districts, including by a coalition of fourteen states (together, "Plaintiffs"), who now seek declaratory relief and vacatur of portions of the Rule pursuant to the Administrative Procedure Act ("APA").

In light of the change in Administration, the Rule remains under consideration at HHS, and thus Defendants do not address the merits at this time. Nevertheless, the Court need not reach the merits of Plaintiffs' challenge, because this case suffers from a threshold jurisdictional defect: Plaintiffs have failed to establish that this case is ripe for review. Plaintiffs' opening brief is devoid of any concrete facts demonstrating that the Rule will be enforced against them. Indeed, any such arguments could not be plausibly credited in light of the President's recent executive orders regarding the definition of sex and the statutory scheme itself, which requires detailed factual development and multiple layers of process and review before any federal funding can be withheld.

But if the Court nonetheless reaches the merits and finds that Plaintiffs should prevail on any of their claims, the Court should limit any relief to the parties and the provisions of the Rule the Court finds unlawful, consistent with the constitutional and equitable constraints on this Court's remedial authority.

## BACKGROUND

### I.    Statutory and Regulatory Background

Section 1557 of the Affordable Care Act ("ACA") provides that "an individual shall not, on the ground[s] prohibited under" various longstanding federal civil rights statutes—specifically, Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and § 504 of the Rehabilitation Act of 1973—"be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).[1]  In short, § 1557 prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in health programs or activities, any part of which receive federal funds.  *Id.*

Section 1557 further provides that "violations" of its nondiscrimination requirements "shall" be addressed through the "enforcement mechanisms provided for and available under . . . title VI [and] title IX," *id.*—which allow for multiple layers of process and review, *see, e.g.*, 20 U.S.C. § 1682 (Title IX); 42 U.S.C. § 2000d-1 (Title VI).[2]  That enforcement process works as follows.  Upon receiving a complaint or "any other information indicat[ing]" a federal funding recipient's possible noncompliance with § 1557, HHS's Office for Civil Rights ("OCR") will first conduct an investigation, during which it will consider all factors and circumstances "relevant to a determination as to whether the recipient has failed to comply" with the statute.  45 C.F.R. § 80.7(c).  If OCR finds a "failure to comply," it will then "inform the recipient" of its noncompliance and seek to "resolve[]" the matter "by informal means."  *Id.* § 80.7(d)(1); 20 U.S.C. § 1682.  If "compliance cannot be secured by voluntary means," HHS may choose to "effect[]"

---

[1] Section 1557 also addresses discrimination occurring under "any program or activity that is administered by an Executive Agency or any entity established under" Title I of the ACA (*e.g.*, State-based marketplaces for health care coverage).  42 U.S.C. § 18116(a).

[2] Title VI and Title IX's enforcement provisions are materially the same.  *Compare* 42 U.S.C. § 2000d-1, *with* 20 U.S.C. § 1682.  The enforcement procedures under both statutes are also governed by the same implementing regulations.  *See* 45 C.F.R. § 86.71 (adopting and incorporating for purposes of Title IX the "procedural provisions applicable to Title VI"); 45 C.F.R. §§ 80.6–80.11 (Title VI).

such compliance by terminating or withholding federal funding.  20 U.S.C. § 1682.  Any decision to withhold federal funds, however, must be preceded by "an express finding on the record, after opportunity for hearing, of a failure to comply with" § 1557.  *Id.*  The required hearing is subject to robust procedural protections, *see* 45 C.F.R. §§ 80.9, 81.1–.86, and if HHS makes a noncompliance determination, it must submit a "full written report" to congressional committees before it can withhold any funds, 20 U.S.C. § 1682.   Ultimately, any such withholding "shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found."  *Id.*  In addition to these procedural safeguards, § 1557's enforcement mechanism makes OCR's decisions to suspend or terminate federal financial assistance subject to judicial review.  *Id.* § 1683.  Accordingly, the ultimate arbiters of any violation of § 1557 are Article III courts.

## II.    HHS's 2024 Rule Implementing § 1557

On May 6, 2024, HHS published the Rule in the Federal Register.  *See* 89 Fed. Reg. 37,522 (to be codified at 45 C.F.R. pt. 92).  As relevant here, the Rule provides that "discrimination on the basis of sex includes" "discrimination on the basis of . . . [g]ender identity[.]"  45 C.F.R. § 92.101(a)(2)(iv).  The Rule also addresses equal program access, *id.* § 92.206, and insurance coverage, *id.* § 92.207, as described below.

**§ 92.206—Equal Program Access.**  Section 92.206, which addresses equal access to health programs and activities on the basis of sex, applies primarily to those that provide direct health care services to patients, such as hospitals, physical and mental health care providers, and pharmacies.  For example, § 92.206(b)(3) precludes covered entities from "treating individuals differently or separating them on the basis of sex in a manner that subjects any individual to more than de minimis harm[.]"  *Id.*  That provision clarifies that the Rule does not prohibit "a covered entity from operating sex separated programs and facilities"—such as providing separate bathrooms labeled for men and women.  89 Fed. Reg. at 37,593.  Section 92.206(b)(4) also precludes covered providers from denying or limiting health services sought for the purpose of gender-affirming care "that the covered entity would provide to an individual for other purposes

if the denial or limitation is based on an individual's sex assigned at birth, gender identity, or gender otherwise recorded." 45 C.F.R. § 92.206(b)(4). Importantly, the entirety of § 92.206 is subject to § 92.206(c), which makes clear that:

> Nothing in this section requires the provision of any health service where the covered entity has a legitimate, nondiscriminatory reason for denying or limiting that service, including where the covered entity typically declines to provide the health service to any individual or where the covered entity reasonably determines that such health service is not clinically appropriate for a particular individual.

*Id*. § 92.206(c). In other words, no § 1557 violation occurs where the denial of a service is based on "a legitimate, nondiscriminatory reason," and not "unlawful animus or bias" or "pretext for discrimination." *Id.*

**§ 92.207—Insurance and Other Health-Related Coverage.** Section 92.207 applies to covered entities that provide insurance or other health-related coverage. *Id.* Among other specific prohibitions, § 92.207(b)(3) prohibits insurance issuers from "deny[ing] or limit[ing] coverage" "based upon" an individual's "gender identity," while § 92.207(b)(4) precludes insurance issuers from having or "implement[ing] a categorical coverage exclusion or limitation for all health services related to gender transition or other gender-affirming care[.]" *Id.* § 92.207(b)(3)–(4). Like § 92.206, § 92.207 makes clear that:

> Nothing in this section requires coverage of any health service where the covered entity has a legitimate, nondiscriminatory reason for denying or limiting coverage of the health service or determining that such health service fails to meet applicable coverage requirements, including reasonable medical management techniques such as medical necessity requirements.

*Id.* § 92.207(c); *accord id.* § 92.206(c). Thus, as the Rule's preamble explains, "a nondiscriminatory determination that care is not medically necessary based on a patient's anatomy or medical need is permissible." 89 Fed. Reg. at 37,607.

**§ 438.3(d)(4)—Standard Contract Requirements.** Finally, as relevant here, the Rule revises the nondiscrimination provisions of the regulations issued by the Centers for Medicare & Medicaid Services ("CMS"), which govern Medicaid and the Children's Health Insurance Program ("CHIP"). 89 Fed. Reg. at 37,691 (revising 42 C.F.R. § 438.3). These CMS regulations

4

require contracts between States and Medicaid and CHIP managed care plans to include provisions that preclude discrimination against individuals eligible to enroll in those plans. 42 C.F.R. § 438.3(d)(4). Section 438.3(d)(4) adds discrimination on the basis of gender identity to the list of prohibited sex-based discrimination, *id.*, "based on Section 1557" and pursuant to HHS's separate statutory authority under 42 U.S.C. §§ 1396a(a)(4), 1396(a)(19), and 1397aa(a), Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,824, 47,892 (Aug. 4, 2022).

## III.   Procedural History

Plaintiffs filed suit on May 30, 2024, Compl., ECF No. 1, and moved for a stay of the effective date of portions of the Rule and for preliminary injunctive relief on June 13, 2024, Pls.' Mot. for § 705 Relief and Prelim Inj. ("PI Motion"), ECF No. 20. On July 3, 2024, the Court issued an order that, *inter alia*, preliminarily enjoined Defendants from "enforcing, relying on, implementing, or otherwise acting pursuant to the final rule entitled Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024), to the extent that the final rule provides that 'sex' discrimination encompasses gender identity." Prelim. Inj., ECF No. 30. Defendants appealed that order to the Fifth Circuit Court of Appeals, but that appeal was subsequently dismissed on March 13, 2025. Consequently, the parties now proceed to dispositive briefing before this Court, as Plaintiffs seek summary judgment, vacatur, and declaratory relief as to their APA claims.

## LEGAL STANDARDS

Under Rule 12(b)(1), the Court must dismiss an action where it lacks subject matter jurisdiction. "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021) (cleaned up).

Under Rule 56(a), summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a facial challenge to an agency rule, the plaintiff "must establish that no set of circumstances exists under which the [rule] would be valid." *Associated Builders & Contractors of Tex., Inc. v. NLRB*, 826 F.3d 215, 220 (5th Cir. 2016) (quoting *Ctr. for Individual*

*Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006)); *see also Reno v. Flores*, 507 U.S. 292, 301 (1993). "That means that to prevail, the Government need only demonstrate that [the rule] is [valid] in some of its applications." *United States v. Rahimi*, 602 U.S. 680, 693 (2024), *remanded*, 117 F.4th 331 (5th Cir. 2024). The Court must "consider the circumstances in which" the challenged provision is "most likely" to be valid. *Id.* at 702. "Where [courts] conclude that a challenged regulatory provision does not exceed [the statute's] limits . . . [they] will uphold the provision and preserve the right of complainants to bring as-applied challenges against any alleged unlawful applications." *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*, 964 F.3d 1177, 1185 (D.C. Cir. 2020) (citation omitted).

## ARGUMENT

The Court need not reach the merits in this case as Plaintiffs' claims are fundamentally not ripe. Put simply, they cannot plausibly allege any credible threat of enforcement under the Rule in light of the President's recent executive orders regarding the definition of sex, and where the statutory scheme itself requires further factual development before judicial resolution. But even if the Court determines it has jurisdiction, any relief should be limited, as neither vacatur nor declaratory relief is appropriate on these facts.

## I.    Plaintiffs' Challenge Is Unripe

Article III of the United States Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Ripeness is an "essential component[]" of "Article III's case-or-controversy requirement" because a court has no power to decide disputes that are not yet justiciable. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

In order to assess whether a particular claim is ripe for judicial review, the Court must consider both "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003). If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quotation marks omitted). *See also Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) ("an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests'" (quoting *Middle S. Energy, Inc. v. New Orleans*, 800 F.2d 488, 490 (5th Cir.1986))). Even when "the question presented" is "purely legal," it is unfit for adjudication where a concrete factual context would facilitate a court's "ability to deal with the legal issues presented." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812 (2003) (cleaned up); *see also Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981) (legal issue not ripe where judicial review "would stand on a much surer footing in the context of an application to a specific factual framework").

In arguing that their challenge is ripe, Plaintiffs assert that the Rule "threatens [them] with the loss of billions of dollars in federal funds." Pls.' Reply in Supp. of Mot. for § 705 Relief and Prelim. Inj. ("PI Reply") at 2, ECF No. 26; Pls.' Mem. Br. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Br.") at 7, ECF No. 62 (incorporating PI Reply at 2). *See also* Pls.' Br. at 7 ("Plaintiffs 'need not assume such risks while waiting for HHS to drop the hammer.'" (alteration omitted) (incorporating PI Reply at 3)). In their view, Plaintiffs' claims will remain justiciable, unless and until the Court declares the "meaning of Section 1557 that would govern going forward." *Id.* at 9.

**A.** Plaintiffs' challenge to the Rule is not ripe. For starters, the Rule remains under consideration at HHS, in light of the change in Administration. Moreover, Plaintiffs assert that the President has issued two executive orders that, taken together, (1) "reject[] incorporating concepts of 'gender identity' into any 'interpretation of and application of Federal law'"; (2)

7

"disagree[] that *Bostock* 'requires gender identity-based access to single-sex spaces under, for example, Title IX'"; (3) order agencies to "ensure grant funds do not promote gender ideology"; and (4) "direct[] HHS to 'take all appropriate actions to end'" specified treatments for children with gender dysphoria—"including under Section 1557." Pls.' Br. at 6 (citing *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025); *Protecting Children from Chemical and Surgical Mutilation*, Exec. Order 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025)). Put differently, Plaintiffs cannot credibly assert, in spite of the President's executive orders, that they face any threat of compliance costs or loss of federal funds under the Rule. *See Thomas*, 473 U.S. at 580–81 (claim that is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all" is not ripe (quotation marks omitted)). Indeed, Plaintiffs have not put forth any evidence that they have incurred or are likely to incur any compliance costs associated with the Rule. Nor have they alleged, let alone put forth any evidence, that Defendants intend to terminate federal funds should Plaintiffs fail to comply with the Rule.

Plaintiffs nevertheless claim that they "retain 'a concrete interest,'" so long as the "Rule remains operative." Pls.' Br. at 9. But the Supreme Court has made clear that "[m]ere uncertainty as to the validity of a legal rule does not constitute a hardship for purposes of the ripeness analysis." *Nat'l Park*, 538 U.S. at 804; *see, e.g.*, *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 729–30, 733–34 (1998) (holding that case was not ripe where the plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain," and noting that there would be an administrative process before plaintiffs would face any "practical harm"); *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164–65 (1967) (finding that challenge to regulation was not ripe where the "impact of the administrative action" was not "felt immediately by those subject to it in conducting their day-to-day affairs" and "no irremediabl[y] adverse consequences flow[ed] from requiring a later challenge"). Given the change in Administration and the President's recent executive orders, Plaintiffs are unable to establish that

there is a risk HHS will enforce the challenged provisions of the Rule against them.  Thus, their claims are not ripe, and the case should be dismissed without prejudice.[3]

**B.**  Plaintiffs' challenge to the Rule is also unripe for an additional, independent reason: even if HHS enforces the challenged portions of the Rule, the legal issues require significant further factual development and thus are not fit for judicial resolution.  *See Pennzoil*, 645 F.2d at 398; *Nat'l Park*, 538 U.S. at 812 ("judicial resolution of the [legal] question presented here should await a concrete dispute about a particular [violation]").  The Rule itself makes clear that it "does not impose a categorical requirement that covered entities must provide gender-affirming care," 89 Fed. Reg. at 37,596; nor does it "specify whether certain benefit design practices are per se discriminatory," *id.* at 37,614.  Instead, the Rule provides that Plaintiffs, as health care providers and insurers, can decline to provide or cover health services where they have a "legitimate, nondiscriminatory reason for denying or limiting" provision or coverage of "that service."  45 C.F.R. §§ 92.206(c), 92.207(c).  This includes circumstances where the covered provider "reasonably determines that such health service is not clinically appropriate for a particular individual," *id.* § 92.206(c), or where the covered insurer employs "reasonable medical management techniques such as medical necessity requirements," *id.* § 92.207(c).  Put differently, where a "medical necessity determination" to deny coverage constitutes a "bona fide medical judgment," there would be no impermissible discrimination under the Rule.  *See* 89 Fed. Reg. at 37,613.  Thus, as the Rule explains, the determination by HHS "of whether a challenged action is discriminatory is necessarily a fact-specific, case-by-case analysis dependent on the facts of the particular situation."  *Id.* at 37,616.

Plaintiffs do not allege that HHS has engaged or will engage in this fact-specific, case-by-case analysis with respect to any of their health programs or their provision of coverage.  Nor is there any evidence that HHS has initiated or will initiate the extensive administrative

---

[3] Plaintiffs' reliance (Pls.' Br. at 8–9) on *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298 (2012), and *Ellis v. Railway Clerks*, 446 U.S. 435 (1984), is inapposite, as those cases dealt with mootness, not ripeness.

process that would need to precede any suspension of federal funding for any purported violations of the Rule.

But even if Plaintiffs could show that HHS is likely to initiate an investigation, HHS would consider, as part of any investigation, all "factors relevant to a determination as to whether the recipient has failed to comply" with § 1557's requirements, 45 C.F.R. § 80.7(c)—including any bona fide medical judgments regarding the medical necessity of treatment. Moreover, HHS cannot withhold federal funding based on failure to comply without first seeking to secure voluntary compliance through informal means, *id.* § 80.7(d)(1). And even if such efforts were to fail, HHS cannot terminate federal funding without first conducting a formal administrative hearing and issuing a written report to Congress, *id.* § 80.8(c)—the results of which are subject to Article III judicial review, *id.* § 80.11; 20 U.S.C. § 1683 (incorporated by 42 U.S.C. § 18116(a)). The practical reality of this statutory scheme for any enforcement belies any suggestion of ripeness here, as it is clear that legal resolution of the issues require further and significant factual development. *See Nat'l Park*, 538 U.S. at 812; *United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000) (finding claims unripe where "train of events [that] would necessarily have to occur" was based on "conjecture and speculation"). The Court thus should dismiss this case, postponing any judicial review unless and until HHS pursues this administrative process, when Plaintiffs' feared harms of losing federal funding would be more than pure speculation.

## II.    Any Relief Should Be Limited

To the extent the Court is inclined to reach the merits and determine that portions of the Rule violate the APA, it should limit any relief to parties and to the provisions of the Rule that are actually challenged and decline to enter any duplicative declaratory relief.

### A.    Vacatur of the Challenged Provisions of the Rule Would Be Improper

Plaintiffs begin by asking the Court to vacate the provisions of the Rule encompassed in the Court's prior preliminary ruling. Pls.' Br. at 15–16.[4] The Court should decline to do so as

---

[4] The Court stayed the effective date of the Rule insofar as it "is intended to extend discrimination

universal vacatur remains an improper remedy, and Plaintiffs nonetheless fail to carry their burden of demonstrating that vacatur is appropriate as to all provisions the Court previously stayed.

1.  The APA is not properly read to require universal vacatur of any challenged provisions of any rule.  Section 706(2) of the APA does not authorize *any* particular form of relief; indeed, it does not pertain to remedies at all, which are instead governed by 5 U.S.C. § 703.  Instead, § 706(2) directs the reviewing court to "set aside agency action, findings, and conclusions found to be," among other things, "arbitrary, capricious," "in excess of statutory . . . authority," or "otherwise not in accordance with law," when resolving an individual APA challenge.  5 U.S.C. § 706(2).  In that regard, § 706(2) is an instruction to disregard, not vacate.  *See* Br. for Pet'rs at 39–44, *United States v. Texas*, 599 U.S. 670 (2023), No. 22-58, 2022 WL 4278395, at *40–41 (explaining why treating § 706(2) as an "instruction to disregard unlawful agency action" is consistent with the statutory context and normal principles of judicial review of legislation).

Beyond the text, though, traditional principles of equity counsel against awarding the sweeping relief of universal vacatur.  That is, when Congress adopted the "unremarkable" "set aside" language in § 706(2), there was no reason to think it "meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case."  *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring); *see also California v. Texas*, 593 U.S. 659, 672 (2021) (explaining that remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract'" (citation omitted)).

2.  Defendants nevertheless recognize that the Fifth Circuit has characterized vacatur as the "default" remedy under the APA.  *Data Mkg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859–60 (5th Cir. 2022).  That default remedy, though, is neither always required nor always appropriate, as courts, including the Fifth Circuit, have recently recognized.  *See, e.g., See Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality opinion) (concluding without

_____

on the basis of sex to include discrimination on the basis of gender identity in the following regulations: 42 C.F.R. §§ 438.3, 438.206, 440.262, 460.98, 460.112; 45 C.F.R. §§ 92.5, 92.6, 92.7, 92.8, 92.9, 92.10, 92.101, 92.206-211, 92.301, 92.303, 92.304."  Prelim. Inj. at 1.

contradiction from any other member of the Court that the district court could consider on remand "a more limited remedy" than universal vacatur, and instructing the district court to "determine what remedy . . . is appropriate to effectuate" the judgment), *aff'd*, 602 U.S. 406 (2024); *see Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 952 n.102 (5th Cir. 2024) (noting that the en banc *Cargill* court remanded the case to district court for briefing on the appropriate scope of any relief under the APA); *Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431, 499–502 (N.D. Tex. 2024), appeal filed No. 24-10603 (5th Cir. July 3, 2024) (declining to vacate agency regulations implementing a statutory provision the court found unconstitutional, and instead enjoining the agency from enforcing the challenged provisions).

In that regard, *first*, any vacatur of the Rule in this case should apply only to those aspects of the Rule for which the Court finds Plaintiffs have met their burden for summary judgment relief. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (relief should only involve "portions of the Rule" that a plaintiff "*actually challenges* and for which it has shown a likelihood of success on the merits"). Here, Plaintiffs nominally ask this Court to vacate more than twenty provisions of the Rule. Pls.' Br. at 16 (citing Prelim. Inj. at 1). But in reality, they challenge only a single facet of the Rule—namely, the Rule's explanation that, in light of the Supreme Court's decision in *Bostock*, § 1557's prohibition against sex discrimination necessarily encompasses discrimination on the basis of gender identity, *see, e.g.*, 45 C.F.R. § 92.101(a)(2)(iv); Pls.' Br. at 10–13. In other words, they do not challenge any of the provisions in the Rule that say nothing whatsoever about gender-identity discrimination. *See, e.g.*, 45 C.F.R. §§ 92.5 (assurances of nondiscrimination), 92.6 (remedial and voluntary actions by recipients), 92.7 (requirements of § 1557 coordinator). *See also* Defs.' Opp'n to Pls.' Mot. for § 705 Relief and Prelim. Inj. ("Opp'n") at 6 n.5, ECF No. 24 (identifying provisions not challenged by Plaintiffs). And even as to the provisions that do, Plaintiffs do not challenge those gender-identity discrimination provisions—let alone carry their burden at summary judgment—to the extent they concern matters unrelated to the administration of sex-segregated spaces or the provision of or coverage for gender-affirming care. *See* Pls. Br. at 9 (arguing that the Rule "dictate[s] how health

care entities must run facilities and provide patient care"). Consequently, should the Court conclude that this case remains justiciable *and* that portions of the Rule violate the APA, the Court should not vacate every provision contained in the Court's prior preliminary ruling. Rather, in complying with the Fifth Circuit's command that relief shall run only to those provisions "*actually challenge*[*d*]," *Career Colls.*, 98 F.4th at 255, the Court should limit any vacatur to those provisions, or portions of the Rule, that address the administration of sex-segregated spaces or the provision of or coverage for gender-affirming care. Thus, any vacatur should be limited to 45 C.F.R. §§ 92.101(a)(2)(iv), 92.206(b)(1)–(4), 92.207(b)(3)–(5); 42 C.F.R. §§ 438.3(d)(4), 438.206(c)(2), 440.262, 460.98(b)(3), 460.112(a)—and only to the extent these provisions are "intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity." Prelim. Inj. at 1.

Limiting any relief in this way likewise comports with the prevailing view on severability. The Supreme Court has long held a regulation severable where severance would "not impair the function of the statute as a whole, and there is no indication that the regulation would not have been passed but for its inclusion." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988) (invalidating only the provision of a regulation that exceeded the agency's statutory authority); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006). Here, the severability clause, 45 C.F.R. § 92.2(c), creates the presumption that the validity of the entire regulation is not dependent on the validity of any specific provision, *see* Pls.' Br. at 16 (recognizing that it would be appropriate to "leav[e] the non-offending provisions in place").

*Second*, any relief should be limited, at most, to the Plaintiff States. "The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 585 U.S. 48, 72 (2018); *see also id.* at 72–73 (citing *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006)); *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994). Indeed, Plaintiffs have no interest in whether others are subject to the Rule, nor standing to assert claims on behalf of others. Thus, Plaintiffs' claims would be fully redressed through vacatur of the challenged portions of the Rule as to them.

**B.      Plaintiffs Are Not Entitled to Declaratory Relief**

Plaintiffs do not seek declaratory relief in the alternative. Instead, they seek to double down on the relief sought by arguing that they are entitled to both vacatur *and* declaratory relief. *See* Pls.' Br. at 16. They do so, without actually specifying the declaratory relief they seek. *See id.* (suggesting that the Court issue declaratory relief as to "any other defects this Court opts to address"). The Court should reject Plaintiffs' request for declaratory relief that, on its face, is vague, overly broad, and unintelligible.

The Court should likewise decline to enter Plaintiffs' overly broad request for relief because, as the Supreme Court has recognized, "declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Labs*, 387 U.S. at 148. Those same concerns regarding Article III justiciability likewise preclude declaratory judgment here, "where the parties' dispute remains academic, instead of grounded in a specific and concrete threat." *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880, 883–85 (N.D. Tex. 2008) (citing *Orix Credit*, 212 F.3d at 896–98); *Orix Credit*, 212 F.3d at 897 (reversing the district court's grant of declaratory relief because the purported "controversy" was "largely, if not purely, hypothetical"). *See supra* § I.

Indeed, Plaintiffs concede as much. They contend, in accordance with nonbinding Sixth Circuit precedent, that "a *forward-looking* declaration of rights will help parties by 'clarifying and settling the legal relations in issue' and 'afford relief from the uncertainty . . . and controversy giving rise to the proceeding.'" Pls.' Br. at 16–17 (citing *Grand Trunk W.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).[5] In other words, Plaintiffs do not actually seek

---

[5] Plaintiffs' reliance on the nonbinding precedent in *Grand Trunk* is inapposite, as they omit the remaining, relevant factors that grounded the Sixth Circuit's analysis—namely, "whether the declaratory action would settle the controversy"; "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'"; and "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. As set forth above, all three of those omitted factors counsel against declaratory relief,

declaratory relief for the purpose of remedying the issues in this case.  To the contrary, they seek, based on "nearly a decade" of *prior* litigation, to ensure certainty against any "'*future* agency action' by HHS" against Plaintiffs.  Pls.' Br. at 17 (emphasis added).  That is, they seek to bind the agency's future actions and legal interpretations as to Plaintiffs—notwithstanding the current ripeness issues—in perpetuity.  District courts, however, do not "sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666 (5th Cir. 1967); *see also Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure . . .  may not be made the medium for securing an advisory opinion in a controversy which has not arisen."). Accordingly, the Court should reject Plaintiffs' attempt to seek an "advisory opinion[]" that would bind the parties in future administrative proceedings.  *Life Partners, Inc. v. Life Ins. Co. of N. Am.*, 203 F.3d 324, 325 (5th Cir. 1999).

Declaratory judgment is likewise improper to the extent the Court is inclined to vacate provisions of the Rule that Plaintiffs actually challenge.  As stated previously, Defendants preserve the issue of whether universal vacatur is a permissible form of relief under the APA.  Nevertheless, it makes little practical sense for this Court to take the extraordinary step of issuing discretionary, declaratory relief—even as it relates to the parties—if it determines that the actually challenged provisions of the Rule should be vacated nationwide.  *See Texas*, 599 U.S. at 703 (Gorsuch, J., concurring) ("It exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide."); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) (reversing district court's grant of extraordinary remedy because a "less drastic remedy"—vacatur—was "sufficient to redress respondents' injury").  In explaining the impropriety of granting duplicative relief, Judge Pittman's heed seems *apropos*:

---

as Plaintiffs are not entitled to obtain an advisory opinion on legal issues that are not ripe and would ultimately bind future agency action.

> In vacating an agency action, the Court renders the action itself a nullity, meaning "the rule shall no longer have legal effect." Simply put, the contested action (1) is declared unlawful, meaning (2) the government must stop enforcing it. Here, the Court's declaratory judgment and permanent injunction serve the same purpose.

*Nuziard*, 721 F. Supp. 3d at 501–02 (citations omitted). Put simply, should the Court decide to vacate any portions of the Rule, declaratory judgment would provide no additional clarity as to the issues in this case. To do so would contravene principles of equity and serve no practical import. For these reasons, the Court should decline to enter Plaintiffs' vague and overly broad request for declaratory judgment.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for summary judgment and dismiss this case as not ripe. Should the Court proceed to the merits and find that Plaintiffs are entitled to relief, however, any such relief must be limited to the parties and the provisions the Court finds unlawful.

Dated: May 21, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director

*/s/ Sarah M. Suwanda*
SARAH M. SUWANDA
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel.: (202) 305-3196
E-mail: sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*

16