# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, *et al.*, ) | |
| ) | |
|    *Plaintiffs*, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-00161-LG-BWR |
| ) | |
| ROBERT F. KENNEDY, JR., in his official ) | |
| capacity as Secretary of the U.S. Department of ) | |
| Health and Human Services, *et al.*, ) | |
| ) | |
|    *Defendants*. ) | |
| ) | |

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AND
RESPONSE IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.   The States' Claims are Justiciable................................................................................ 1

    II.  The 2024 Rule is Unlawful. ........................................................................................ 5

    III. The States are Entitled to Vacatur and Declaratory Relief ......................................... 5

        A.  This Court should vacate the unlawful provisions of the 2024 Rule ..................... 5

        B.  This Court should grant declaratory relief to the States ........................................ 7

CONCLUSION .................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) .................................................................................................................. 2

*Braidwood Mgmt., Inc. v. EEOC*,
   70 F.4th 914 (5th Cir. 2023) ................................................................................................. 3, 7

*Brown & Root, Inc. v. Big Rock Corp.*,
   383 F.2d 662 (5th Cir. 1967) ................................................................................................... 9

*Career Colls. & Schs. of Tex.*,
   98 F.4th 220 (5th Cir. 2024) .................................................................................................... 7

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) .................................................................................................................. 5

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ................................................................................................... 3

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   596 U.S. 212 (2022) .................................................................................................................. 4

*Data Mkg. P'ship, LP v. U.S. Dep't of Labor*,
   45 F.4th 846 (5th Cir. 2022) .................................................................................................... 5

*Duarte ex rel. Duarte v. City of Lewisville*,
   759 F.3d 514 (5th Cir. 2014) ................................................................................................... 3

*Elsas v. Yakkassippi, LLC*,
   811 F. App'x 255 (5th Cir. 2020) ........................................................................................... 8

*Ervin v. Sprint Commc'ns Co. LP*,
   364 F. App'x 114 (5th Cir. 2010) ........................................................................................... 5

*Evans v. Holder*,
   618 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................................... 5

*Florida v. HHS*,
   739 F. Supp. 3d 1091 (M.D. Fla. 2024) .............................................................................. 2, 3

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .................................................................................................................. 3

*Gill v. Whitford*,
   585 U.S. 48 (2018) .................................................................................................................... 7

*Kentucky v. EPA*,
   123 F.4th 447 (6th Cir. 2024) ............................................................................................... 7

*Louisiana v. EEOC*,
   No. 2:24-cv-00629, 2025 WL 1462583 (W.D. La. May 21, 2025) ........................................... 4

*Madsen v. Women's Health Center*,
   512 U.S. 753 (1994) ............................................................................................................. 7

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ............................................................................................................. 9

*Nat'l Ass'n for Gun Rights, Inc. v. Garland*,
   741 F. Supp. 3d 568 (N.D. Tex. 2024) .............................................................................. 7, 8

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ............................................................................................................. 2

*Nuziard v. Minority Business Development Agency*,
   721 F. Supp. 3d 431 (N.D. Tex. 2024) ................................................................................. 9

*PHH Corp. v. CFPB*,
   839 F.3d 1 (D.C. Cir. 2016), *reversed on reh'g en banc on other grounds*, 881 F.3d
   75 (D.C. Cir. 2018) .............................................................................................................. 1

*Tennessee v. Cardona*,
   762 F. Supp. 3d 615 (E.D. Ky. 2025) .................................................................................. 8

*Tennessee v. Cardona*,
   No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024) ................................................ 6, 7

*Tennessee v. EEOC*,
   129 F.4th 452 (8th Cir. 2025) .......................................................................................... 3, 4

*Tennessee v. U.S. Dep't of Educ.*,
   104 F.4th 577 (6th Cir. 2023) ....................................................................................... 3, 4, 7

*Texas v. Cardona*,
   743 F. Supp. 3d 824 (N.D. Tex. 2024) .............................................................................. 6, 8

*Texas v. EEOC*,
   2:24-CV-173-Z, 2025 WL 1414332 (N.D. Tex. May 15, 2025) ........................................ 3, 4, 8

*Tomei v. Parkwest Med. Ctr.*,
   24 F.4th 508 (6th Cir. 2022) ................................................................................................ 4

**Statutes**

5 U.S.C. § 703 ................................................................................................................................ 1

5 U.S.C. § 706(2) ............................................................................................................... 1, 5

**Other Authorities**

42 C.F.R. § 92.5 ................................................................................................................. 4, 6

42 C.F.R. § 92.6 ..................................................................................................................... 6

42 C.F.R. § 92.7 ..................................................................................................................... 6

42 C.F.R. § 92.8 ..................................................................................................................... 6

42 C.F.R. § 92.9 ..................................................................................................................... 6

42 C.F.R. § 92.10 ................................................................................................................... 6

42 C.F.R. § 92.101(a)(2)(iv) ................................................................................................. 6

42 C.F.R. §§ 92.206-92.211 ................................................................................................. 6

42 C.F.R. § 92.301 ................................................................................................................. 6

42 C.F.R. § 92.303 ................................................................................................................. 6

42 C.F.R. § 92.304 ................................................................................................................. 6

87 Fed. Reg. at 47,886 (Aug. 4, 2022) ................................................................................ 4

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8615, (Jan. 20, 2025) ................................................................................................................................ 5

*Protecting Children from Chemical and Surgical Mutilation*, Exec. Order 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025) ...................................................................................... 5

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) ........................... 5, 6

**INTRODUCTION**

HHS accepts that the 2024 Rule is indefensible on the merits. Yet HHS insists that the unlawful Rule must stay on the books because a shift in enforcement priorities under the new administration makes it less likely that HHS will enforce its gender-identity mandates against the States, allegedly unripening their claims. "But 'trust us' is ordinarily not good enough." *See PHH Corp. v. CFPB*, 839 F.3d 1, 55 (D.C. Cir. 2016) (Kavanaugh, J.) (citation omitted), *reversed on reh'g en banc on other grounds*, 881 F.3d 75 (D.C. Cir. 2018). The threat of enforcement persists while the States' compliance costs mount, and this Court has already recognized that this matter needs no further factual development. The States' claims thus remain ripe and otherwise justiciable. And because the 2024 Rule's interpretation of Section 1557 exceeds HHS's statutory authority and violates the APA, its unlawful provisions should be "set aside." 5 U.S.C. § 706(2).

That means they should be vacated. Indeed, HHS concedes that the Fifth Circuit recognizes vacatur as the "default" remedy under the APA and offers no reason to vary from the norm here. Instead, HHS seeks to drastically narrow the scope of any vacatur. HHS Br. 13. But as this Court found in granting preliminary relief, the 2024 Rule's unlawful redefinition of "sex" discrimination permeates the challenged provisions. And vacatur necessarily affords universal relief, because it "is not party-restricted and allows a court to 'set aside' an unlawful agency action." Op. 28 (citation omitted). Moreover, the States are entitled to declaratory relief, as contemplated by the APA. *See* 5 U.S.C. §§ 703, 706(2). Courts regularly grant declaratory relief on top of vacatur to prevent future efforts to renew unlawful mandates.

**ARGUMENT**

I. **The States' Claims are Justiciable.**

The States' claims remain justiciable despite President Trump's recent Executive Orders, States' Br. 7-9, and HHS's ripeness responses (at 6-10) miss the mark.

1

The States' claims are not "premature"; so, the ripeness doctrine is not an obstacle to deciding this case. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). The 2024 Rule is a "formalized" HHS decision about what Section 1557 requires. *Id.* And this Court has already recognized that instead of an "abstract disagreement[] over administrative policies," *id.*, the States' challenge is meant to head off "concrete, imminent" injuries that will flow from the 2024 Rule, Op. 9, 23-26. Indeed, but for preliminary relief from this Court, *see* Op. 23-26, 31, the 2024 Rule's "effects [would be] felt in a concrete way" by the States now, *Abbott Labs.*, 387 U.S. at 148. Implementing the 2024 Rule's gender-identity requirements costs the States money and their sovereignty, but failing to follow the 2024 Rule puts billions in federal funding at risk. *See* Op. 23-26; *see also* PI Reply 1-3, ECF No. 26; Pls.' Decls., ECF Nos. 20-1 to 20-10. Thus, the States face "hardship" if the unlawful rule stays on the books, *Abbott Labs.*, 387 U.S. at 149, meaning there is no reason to delay adjudicating the "purely legal" question of the 2024 Rule's validity.

HHS's response (at 9) that the legal issues here require "significant further factual development" reheats an argument this Court found unpalatable at the preliminary injunction stage. *Cf.* HHS PI Resp. 7, 20-21, ECF No. 24 (arguing the Court needed to wait for an enforcement action against the States). The States' challenge is straightforward: The 2024 Rule is unlawful because HHS has erroneously interpreted the prohibition against discrimination on the basis of sex in Title IX and the ACA to include protections based on gender identity. *See Florida v. HHS*, 739 F. Supp. 3d 1091, 1103 (M.D. Fla. 2024). Such a challenge presents purely legal arguments that do not rely on or require factual development, making it presumptively ripe for judicial review. *See id.* (citation omitted). And there is no "uncertainty as to" hardships here, *see Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 811 (2003), given the irreparable harms that the States face, *see* Op. 23-26. As this Court recognized in rejecting HHS's prior suggestion to wait for an enforcement action, the States need not wait for HHS to "make the first move" before challenging the 2024 Rule. *See*

2

*Tennessee v. U.S. Dep't of Educ.*, 104 F.4th 577, 603 (6th Cir. 2023); *see also Florida*, 739 F. Supp. 3d at 1102-03; *Texas v. EEOC*, 2:24-CV-173-Z, 2025 WL 1414332, at *9 (N.D. Tex. May 15, 2025).

HHS alternatively suggests that the change in administration diminishes "any threat of compliance costs or loss of federal funds under the Rule," unripening the States' case. HHS Br. 8. Instead of ripeness, HHS's "credible threat" argument is really one of pre-enforcement standing. *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 925 (5th Cir. 2023); *see also Florida*, 739 F. Supp. 3d at 1102 (recognizing a "converge[nce]" in the "standing and ripeness analysis" in cases involving pre-enforcement review) (citation omitted). But since standing is "assessed under the facts existing when the complaint is filed," *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 n.3 (5th Cir. 2014) (citation omitted), shifting enforcement priorities do not rob the States of their standing as "object[s] of [the] regulatory action," *Tennessee v. EEOC*, 129 F.4th 452, 457 (8th Cir. 2025), that face additional "concrete, imminent injury in the form of compliance costs," Op. 9. And that does not even account for the sovereign harms caused by the 2024 Rule or the billions of dollars that are on the line if the States are found to be noncompliant. To the extent HHS means to suggest that shifting enforcement priorities moot the States' claims, *see Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (describing mootness as "standing in a time frame") (citation omitted), it has not carried its "heavy" burden to show that the binding regulations "cannot reasonably be expected" to ever be enforced, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000), particularly given DOJ's admission that other similar challenges to still-live regulations are not moot despite changes in Executive Branch policies, *see* States' Br. 9.

Indeed, HHS's "trust us"-type response (at 7-9) is cold comfort. As the States have explained, President Trump's recent Executive Orders cannot disappear the 2024 Rule from the body of binding federal regulations, and even if the new administration is inclined to rescind the 2024 Rule after review, that process could take years while rulemaking procedures the APA requires

play out. States' Br. 8. HHS acknowledges that the 2024 Rule remains on the books, while declining to explicitly disavow enforcement. In other words, HHS asks the Court to keep the States in regulatory limbo, having to decide whether to acquiesce to an unlawful rule or continue violating the 2024 Rule with the hope that the federal government will not enforce admittedly binding regulations.

Of course, courts "presume that the States will follow the law as long as the Rule is in effect," *Tennessee v. EEOC*, 129 F.4th at 458, triggering the compliance costs this Court already recognized, *see* Op. 9, 23-26. In fact, the States must provide assurances that their health programs and activities "will be operated in compliance with Section 1557"—as guided by the 2024 Rule—to continue receiving the billions in federal funds for health programs that serve their most vulnerable citizens. 42 C.F.R. § 92.5. When it comes to threats against their Medicaid funding, the States need not put billions of dollars on the line while waiting for HHS to "drop the hammer" it retains in its back pocket. *Tennessee v. Dep't of Educ.*, 104 F.4th at 602 (citation omitted). And the current HHS is not the only one who can wield that hammer. The 2024 Rule recognizes that a private right of action exists to enforce Section 1557, *see* 87 Fed. Reg. 47,824, 47,886 (Aug. 4, 2022) (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022)), meaning the public can rely on the Rule's unlawful interpretation to prosecute claims against the States. Moreover, claims under Section 1557 survive for four years, *Tomei v. Parkwest Med. Ctr.*, 24 F.4th 508, 515 (6th Cir. 2022), and future administrations may not share the current administration's enforcement priorities. So the case remains live and justiciable, as the States retain a concrete interest in the outcome. States' Br. 9. To that end, several courts have recently invalidated unlawful federal rules notwithstanding shifting enforcement priorities. *See, e.g.*, *Louisiana v. EEOC*, No. 2:24-cv-00629, 2025 WL 1462583, at *15 (W.D. La. May 21, 2025) (vacating EEOC rule notwithstanding changing EEOC priorities) *Texas v. EEOC*, 2025 WL 1414332, at *8, *16 (similar). This Court should follow suit because the States' claims are ripe for judicial resolution and are otherwise justiciable.

## II. The 2024 Rule is Unlawful.

The 2024 Rule is unlawful because it exceeds HHS's statutory authority for the reasons this Court previously explained. *See* Op. 11-23; States' Br. 9-13. Moreover, the 2024 Rule unlawfully treads on States' traditional police powers to regulate the practice of medicine within their borders and does not derive from reasoned decision-making. States' Br. 13-15. HHS does not contest any of these points, thus "waiv[ing]" their opposition to the same. *See Ervin v. Sprint Commc'ns Co. LP*, 364 F. App'x 114, 117 (5th Cir. 2010); *accord Evans v. Holder*, 618 F. Supp. 2d 1, 13 (D.D.C. 2009). That is unsurprising, as the United States now seems to favor the States' interpretation of Title IX's prohibition against "sex" discrimination, as incorporated in Section 1557. *See Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8615, 8615-16 (Jan. 20, 2025). The United States has also run away from the alleged scientific and policy bases on which HHS relied in promulgating the 2024 Rule, *see Protecting Children from Chemical and Surgical Mutilation*, Exec. Order 14187, 90 Fed. Reg. 8771, 8771 (Jan. 28, 2025), further confirming its arbitrary and capricious underpinnings. This Court should therefore hold the 2024 Rule's gender-identity mandates "unlawful" and "set [them] aside." 5 U.S.C. § 706(2).

## III. The States are Entitled to Vacatur and Declaratory Relief.

### A. This Court should vacate the unlawful provisions of the 2024 Rule.

HHS concedes that vacatur is the "default" remedy when addressing unlawful agency action under the APA. HHS Br. 11 (quoting *Data Mkg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859-60 (5th Cir. 2022)); *see* States' Br. 15. Any suggestion (at 11) otherwise runs counter to the APA's text and decades of judicial precedent. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829-32, 837-43 (2024) (Kavanaugh, J., concurring) (collecting authorities). Indeed, the Fifth Circuit has held that Section 706's "set aside" instruction means to "formally nullify and revoke" unlawful agency action. *Data Mkg. P'ship*, 45 F.4th at 859 (quoting Jonathan F. Mitchell, *The Writ-of-Erasure*

5

*Fallacy*, 104 Va. L. Rev. 933, 950 (2018)).

HHS nonetheless argues (at 11-12) that this case does not "require" vacatur. But while "rare" alternatives to vacatur may exist, HHS fails to explain how any of those alternatives fit the bill here. *See* States' Br. 15 (quoting *Kentucky v. EPA*, 123 F.4th 447, 473 (6th Cir. 2024)). Indeed, HHS never even attempts to carry its "burden to prove that vacatur is unnecessary," *Texas v. Cardona*, 743 F. Supp. 3d 824, 894 (N.D. Tex. 2024) (citation omitted). That's because vacatur is proper given the 2024 Rule's fatal legal deficiencies, and vacating the Rule's unlawful provisions would maintain the status quo understanding of "sex" under Title IX that has held for decades. States' Br. 16. HHS instead urges the Court to limit the scope of any vacatur order, but its arguments are unconvincing.

*First*, HHS argues (at 12-13) that vacatur should extend only to those provisions that the States have "actually challenged." True enough. But HHS is wrong to suggest that the States' challenge implicates only § 92.101(a)(2)(iv)—*i.e.*, the provision defining "sex" discrimination to include gender-identity discrimination—and the handful of provisions that expressly relate to "the administration of sex-segregated spaces or the provision of or coverage for gender-affirming care." HHS Br. 12. As this Court previously recognized, gender-identity mandates pervade the 2024 Rule. *See* Op. 28. That includes, for example, the Rule's requirements regarding recipients' assurances of compliance (§ 92.5), remedial actions (§ 92.6), coordinator investigations (§ 92.7), revision of non-discrimination policies (§ 92.8), training (§ 92.9), notices of non-discrimination (§ 92.10), the provision of health services and insurance coverage (§§ 92.206-92.211), enforcement activities (§§ 92.301, 92.303, 92.304), and each of the other provisions of the 2024 Rule previously stayed by this Court. *Id.* at 31. Principles of equity also counsel in favor of vacating the Rule's challenged provisions to avoid States and providers' having to parse through piecemeal provisions. Regulated entities "should not be forced to determine whether this or that section of the new Rule must be followed when the new definition of sex discrimination might or might not touch the Rule." *See Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *4

(6th Cir. July 17, 2024). And any relief should have the breadth appropriate to avoid any harm the Rule may improperly inflict. *Cf. Career Colls. & Schs. of Tex.*, 98 F.4th 220, 255 (5th Cir. 2024).

HHS's citation (at 13) to the 2024 Rule's severability clause is beside the point. The States do not seek vacatur of the *entire* 2024 Rule—only those provisions that unlawfully extend Section 1557's prohibition against "sex" discrimination to include protections based on gender identity. Nor has HHS shown that it "contemplate[d] enforcement of the Rule without *any* of the core provisions" or that "the cost-benefit analyses underlying the Rule contemplated the idea of allowing these provisions to go into effect with a *different* definition of sex discrimination." *Tennessee v. Cardona*, 2024 WL 3453880, at *4 (emphasis in original).

*Second*, HHS argues (at 13) that relief should be "limited … to the Plaintiff States." But—as this Court previously noted—"the scope of ultimate relief under Section 706 [] is not party-restricted and allows a court to 'set aside' an unlawful agency action." Op. 28 (quoting *Career Colls.*, 98 F.4th at 255). That means that unlawful regulations "are vacated—not that their application to the individual petitioners is proscribed." *Id.* (same). "Vacatur operates on the legal status of a rule, causing the rule to lose binding force." *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, 741 F. Supp. 3d 568, 610 (N.D. Tex. 2024) (citation omitted). HHS fails to explain why the Court should depart from that well-established principle. The only two cases HHS cites in opposition to universal vacatur—*Gill v. Whitford*, 585 U.S. 48 (2018), and *Madsen v. Women's Health Center*, 512 U.S. 753 (1994)—are not APA cases. And whatever alleged lack of "interest" the States have in ensuring others are not subject to an unlawful regulation, HHS Br. 13, "setting aside agency action under § 706 has nationwide effect, is not party-restricted, and affects persons in all judicial districts equally." *Braidwood*, 104 F.4th at 951 (citations omitted).

**B. This Court should grant declaratory relief to the States.**

Plaintiff States are also entitled to declaratory relief clarifying that HHS's authority to enforce Title IX's prohibition against "sex" discrimination, as incorporated in Section 1557, does not include

7

the protections based on gender identity set forth in the 2024 Rule. *See* States' Br. 16-17. HHS's arguments to the contrary fall flat.

To start, HHS faults the States for requesting the Court to declare unlawful the same provisions for which they seek vacatur, calling that request for declaratory relief "vague, overly broad, and unintelligible." HHS Br. at 14-15. It's true that the States ask the Court to declare unlawful the same provisions it stayed in its prior order granting preliminary relief. *See* Order 1-2, ECF No. 30. But that request is hardly difficult to understand. And the proposed final judgment submitted by the States to chambers simultaneously with the filing of their summary judgment motion removes all doubt about the scope of the declaratory relief sought here.

Nor is it problematic, as HHS suggests (at 15-16), to request declaratory relief in addition to vacatur. As the States have pointed out, the APA expressly contemplates declaratory relief establishing the legal rights of the parties. *See* States' Br. 16-17. And other courts have recently entered declaratory judgments alongside vacatur in similar APA challenges. *See, e.g., Texas v. EEOC*, 2025 WL 1414332, at *16 (declaring unlawful and vacating challenged Title VII guidance); *Tennessee v. Cardona*, 762 F. Supp. 3d 615, 628 (E.D. Ky. 2025) (granting declaratory relief alongside vacatur of agency's unlawful Title IX regulations); *Texas v. Cardona*, 743 F. Supp. 3d 824, 894 (N.D. Tex. 2024) (vacating agency's Title IX guidance and declaring its underlying interpretation of Title IX unlawful).

HHS also asserts (at 14-15) that declaratory relief would be improper because any such relief would be merely "advisory" in nature. But that argument fails for the same reasons as HHS's ripeness argument. *See supra* at 2-4. As discussed, the 2024 Rule remains on the books and directly regulates the States' healthcare programs and activities. Furthermore, that a requested remedy would have future operative effect does not render such a request illegitimate. That goes for everything from APA challenges, *see, e.g., Nat'l Ass'n for Gun Rights*, 741 F. Supp. 3d at 611, to real property disputes, *see, e.g., Elsas v. Yakkassippi, LLC*, 811 F. App'x 255, 257 (5th Cir. 2020). HHS's focus on the future effects

8

of declaratory relief ignores the legal certainty the States seek through resolution of their present challenge to HHS's interpretation of Title IX's prohibition against discrimination "on the basis of sex." In other words, the illegality of the 2024 Rule has *already* "come to pass." *See Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666 (5th Cir. 1967) (citation omitted). And far from being "extraordinary," HHS Br. 15, granting declaratory relief alongside vacatur of unlawful agency regulations is a common practice, *see supra* at 8; States' Br. 17 (collecting cases). HHS's reliance on *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), and *Nuziard v. Minority Business Development Agency*, 721 F. Supp. 3d 431 (N.D. Tex. 2024), is misplaced, as those cases contemplated the issuance of *injunctive* relief vis-à-vis vacatur. The States only seek vacatur and declaratory relief—not a permanent injunction. States' Br. 17. And they are entitled to that relief.

## CONCLUSION

This Court should grant summary judgment to the States, declare the challenged provisions of the 2024 Rule unlawful, and set them aside.

Dated: June 4, 2025 Respectfully submitted,

| | |
|---|---|
| **LYNN FITCH** | **JONATHAN SKRMETTI** |
| *Attorney General* | *Attorney General & Reporter* |
| /s/ *Scott G. Stewart* | /s/ *Steven J. Griffin* |
| SCOTT G. STEWART | STEVEN J. GRIFFIN |
| *Solicitor General* | *Senior Counsel for Strategic Litigation* |
| Bar No. 106359 | Bar No. 103218 |
| JUSTIN L. MATHENY | HARRISON GRAY KILGORE* |
| *Deputy Solicitor General* | *Strategic Litigation Counsel and Assistant Solicitor General* |
| Bar No. 100754 | |
| MISSISSIPPI ATTORNEY GENERAL'S OFFICE | OFFICE OF THE TENNESSEE ATTORNEY GENERAL |
| P.O. Box 220 | P.O. Box 20207 |
| Jackson, Mississippi 39205 | Nashville, Tennessee 37202 |
| (601) 359-3680 | (615) 741-3491 |
| scott.stewart@ago.ms.gov | steven.griffin@ag.tn.gov |
| justin.matheny@ago.ms.gov | harrison.kilgore@ag.tn.gov |
| *Counsel for Plaintiff State of Mississippi* | *Counsel for Plaintiff State of Tennessee* |
| | |
| **STEVE MARSHALL** | **CHRISTOPHER CARR** |
| *Attorney General* | *Attorney General* |
| /s/ *A. Barrett Bowdre* | /s/ *Stephen Petrany* |
| A. BARRETT BOWDRE* | STEPHEN PETRANY* |
| *Principal Deputy Solicitor General* | *Solicitor General* |
| OFFICE OF THE ATTORNEY GENERAL STATE OF ALABAMA | OFFICE OF THE ATTORNEY GENERAL OF GEORGIA |
| 501 Washington Avenue | Georgia Department of Law |
| P.O. Box 300152 | 40 Capitol Square SW |
| Montgomery, Alabama 36130-0152 | Atlanta, Georgia 30334 |
| (334) 242-7300 | (404) 458-3408 |
| barrett.bowdre@AlabamaAG.gov | spetrany@law.ga.gov |
| *Counsel for Plaintiff State of Alabama* | *Counsel for Plaintiff State of Georgia* |

**THEODORE E. ROKITA**
   *Attorney General*

/s/ *James A. Barta*
JAMES A. BARTA*
   *Solicitor General*
INDIANA ATTORNEY GENERAL'S OFFICE
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, Indiana 46204
(317) 232-0709
James.Barta@atg.in.gov
*Counsel for Plaintiff State of Indiana*


**RUSSELL COLEMAN**
   *Attorney General*

/s/ *Justin D. Clark*
JUSTIN D. CLARK*
   *Civil Chief*
LINDSEY R. KEISER*
   *Assistant Attorney General*
COMMONWEALTH OF KENTUCKY
OFFICE OF THE ATTORNEY GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
justind.clark@ky.gov
lindsey.keiser@ky.gov
*Counsel for Plaintiff Commonwealth of Kentucky*


**MICHAEL T. HILGERS**
   *Attorney General*

/s/ *Lincoln J. Korell*
LINCOLN J. KORELL*
   *Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
lincoln.korell@nebraska.gov
*Counsel for Plaintiff State of Nebraska*

**KRIS W. KOBACH**
   *Attorney General*

/s/ *Jay Rodriguez*
JAY RODRIGUEZ*
   *Assistant Attorney General*
OFFICE OF THE KANSAS ATTORNEY GENERAL
120 SW 10th Ave.
Topeka, Kansas 66612
(785) 296-4733
jay.rodriguez@ag.ks.gov
*Counsel for Plaintiff State of Kansas*


**ELIZABETH B. MURRILL**
   *Attorney General*

/s/ *Kelsey L. Smith*
KELSEY L. SMITH*
   *Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, Louisiana 70802
(225) 428-7432
smithkel@ag.louisiana.gov
*Counsel for Plaintiff State of Kansas*


**DAVE YOST**
   *Attorney General*

/s/ *T. Elliot Gaiser*
T. ELLIOT GAISER*
   *Solicitor General*
OFFICE OF THE OHIO ATTORNEY GENERAL
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Thomas.Gaiser@ohioago.gov
*Counsel for the State of Ohio*

| | |
|---|---|
| **GENTNER DRUMMOND**<br>  *Attorney General*<br><br>/s/ *Garry M. Gaskins, II*<br>GARRY M. GASKINS, II*<br>  *Solicitor General*<br>OKLAHOMA OFFICE OF THE ATTORNEY GENERAL<br>313 NE 21st Street<br>Oklahoma City, Oklahoma 73105<br>(405) 312-2451<br>Garry.Gaskins@oag.ok.gov<br>*Counsel for the State of Ohio* | **ALAN WILSON**<br>  *Attorney General*<br><br>/s/ *Thomas T. Hydrick*<br>THOMAS T. HYDRICK*<br>  *Solicitor General*<br>OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA<br>1000 Assembly Street<br>Columbia, South Carolina 29201<br>(803) 734-4127<br>thomashydrick@scag.gov<br>*Counsel for Plaintiff State of South Carolina* |
| **MARTY J. JACKLEY**<br>  *Attorney General*<br><br>/s/ *Clifton Katz*<br>CLIFTON KATZ*<br>  *Assistant Attorney General*<br>JONATHAN K. VAN PATTEN<br>  *Assistant Attorney General*<br>OFFICE OF THE ATTORNEY GENERAL STATE OF SOUTH DAKOTA<br>1302 E. Hwy. 14, Suite #1<br>Pierre, South Dakota  57501<br>(605) 773-3215<br>clifton.katz@state.sd.us<br>*Counsel for Plaintiff State of South Dakota* | **JASON S. MIYARES**<br>  *Attorney General*<br><br>/s/ *Kevin M. Gallagher*<br>KEVIN M. GALLAGHER*<br>  *Principal Deputy Solicitor General*<br>VIRGINIA ATTORNEY GENERAL'S OFFICE<br>202 North 9th Street<br>Richmond, Virginia 23219<br>(804) 786-2071<br>kgallagher@oag.state.va.us<br>*Counsel for Plaintiff Commonwealth of Virginia* |
| **JOHN B. McCUSKEY**<br>  *Attorney General*<br><br>/s/ *Michael R. Williams*<br>MICHAEL R. WILLIAMS*<br>  *Solicitor General*<br>OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA<br>State Capitol Complex<br>Building 1, Room E-26<br>Charleston, WV 25301<br>(304) 558-2021<br>michael.r.williams@wvago.gov<br>*Counsel for Plaintiff State of Virginia* | *Admitted *Pro Hac Vice* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 4, 2025, a true and correct copy of the foregoing document was served via the Court's electronic filing system, which sent notice of filing to all counsel of record.

                                                                      */s/ Steven J. Griffin*
                                                                      STEVEN J. GRIFFIN