UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*,<br><br>        Defendants. | No. 1:24-cv-00161-LG-BWR |

**DEFENDANTS' REPLY IN SUPPORT OF**
**<u>CROSS-MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT...................................................................................................................................1

I.      Plaintiffs' Challenge Is Unripe................................................................................1

II.     To the Extent the Court Is Inclined to Address the Merits, Any Relief Should Be Properly Limited in Scope .....................................................................................5

        A.     Vacatur of Provisions of the Rule that Plaintiffs Identify But Do Not Actually Challenge Would Be Improper.................................................5

        B.     Plaintiffs Are Not Entitled to Declaratory Relief ...................................7

CONCLUSION................................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1976) ............................................................................................. 1, 2, 7

*Arizona v. Biden*,
  40 F.4th 375 (6th Cir. 2022) ......................................................................................... 7

*Braidwood Mgmt., Inc. v. EEOC*,
  70 F.4th 914 (5th Cir. 2023) ..................................................................................... 3, 4

*Brown & Root, Inc. v. Big Rock Corp.*,
  383 F.2d 662 (5th Cir. 1967) ......................................................................................... 8

*California v. Texas*,
  593 U.S. 659 (2021) ....................................................................................................... 7

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024) ......................................................................................... 6

*Choice Inc. of Tex. v. Greenstein*,
  691 F.3d 710 (5th Cir. 2012) ......................................................................................... 3

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ....................................................................................................... 3

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
  45 F.3d 530 (1st Cir. 1995) ........................................................................................ 2, 4

*Florida v. HHS*,
  739 F. Supp. 3d 1091 (M.D. Fla. 2024) ..................................................................... 4, 5

*Gill v. Whitford*,
  585 U.S. 48 (2018) ......................................................................................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ....................................................................................................... 4

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ....................................................................................................... 7

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
  538 U.S. 803 (2003) ................................................................................................... 3, 4

*Shields v. Norton*,
  289 F.3d 832 (5th Cir. 2002) ......................................................................................... 3

*State Farm Mut. Auto. Ins. Co. v. Dole*,
  802 F.2d 474 (D.C. Cir. 1986) ...................................................................................... 4

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ....................................................................................................... 4

**Statutes**

5 U.S.C. § 706(2) ................................................................................................................ 7

**Administrative & Executive Materials**

45 C.F.R. § 92.5 .................................................................................................................. 6

45 C.F.R. § 92.6 .................................................................................................................. 6

45 C.F.R. § 92.7 .................................................................................................................. 6

45 C.F.R. § 92.8 .................................................................................................................. 6

45 C.F.R. § 92.9 .................................................................................................................. 6

45 C.F.R. § 92.10 ................................................................................................................ 6

45 C.F.R. § 92.101(a)(2)(iv) ............................................................................................... 7

45 C.F.R. § 92.208 .............................................................................................................. 6

45 C.F.R. § 92.209 .............................................................................................................. 6

45 C.F.R. § 92.210 .............................................................................................................. 6

45 C.F.R. § 92.211 .............................................................................................................. 6

45 C.F.R. § 92.301 .............................................................................................................. 6

45 C.F.R. § 92.303 .............................................................................................................. 6

45 C.F.R. § 92.304 .............................................................................................................. 6

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*,
  Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ......................................... 2

*Protecting Children from Chemical and Surgical Mutilation*,
  Exec. Order No. 14,187, 90 Fed. Reg. 8771 (Jan. 28, 2025) ......................................... 2

**INTRODUCTION**

Nothing in Plaintiffs' opposition detracts from the proper conclusion that dismissal of this case is warranted. Fundamentally, Plaintiffs have failed to allege a single piece of evidence of any credible threat of enforcement under the Rule. That omission makes logical sense. There has been a sea-change in administration priorities since this Court entered preliminary relief nearly a year ago, and thus no legal uncertainty as to the enforcement of the Rule exists. Additionally, Plaintiffs fail to meet their burden of demonstrating why provisions of the Rule should be vacated or why the Court should issue an advisory opinion on this issue by way of declaratory relief. Accordingly, for the reasons set forth below, the Court should dismiss the Complaint in its entirety and decline to enter summary judgment for Plaintiffs.

**ARGUMENT**

The Court need not reach the merits in this case as Plaintiffs' claims are not ripe. Put simply, Plaintiffs have failed to establish any credible threat of enforcement under the Rule in light of the President's recent executive orders regarding the definition of sex, and where the statutory scheme itself requires further factual development before judicial resolution. But if the Court determines it has subject-matter jurisdiction to decide this case, any relief should be appropriately limited.

**I.    Plaintiffs' Challenge Is Unripe**

Plaintiffs contend that under *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1976), their claims are not premature because the Rule represents a formalized decision by the Department of Health and Human Services ("HHS") about what § 1557 requires. Pls.' Combined Reply in Supp. of Mot. for Summ. J. & Resp. in Opp'n to Defs.' Cross-Mot. to Dismiss ("Pls.' Opp'n") at 2, ECF No. 70. That cursory statement, however, ignores the current realities. As Defendants have already explained, the Rule remains under consideration at HHS in light of the change in Administration. Defs.' Mem. in Supp. of Defs.' Cross-Mot. to Dismiss ("Defs.' Br.") at 7–8, ECF No. 69. Indeed, Defendants have publicly stated that they are committed to implementing the President's recent executive orders, *see* Defendants' Status Report & Response to Plaintiff's

Motion to Reopen, *Florida v. Dep't of Health & Hum. Servs.*, No. 8:24-cv-01080-WFJ-TGW (M.D. Fla. June 4, 2025), ECF No. 75—which, as Plaintiffs assert, "reject[] incorporating concepts of 'gender identity' into any 'interpretation of and application of Federal law,'" and direct HHS to "'take all appropriate actions to end'" specified treatments for children with gender dysphoria, "'including under Section 1557,'" Pls.' Mem. Br. in Supp. of Pls.' Mot. for Summ. J. at 6, ECF No. 62 (citing *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025); *Protecting Children from Chemical and Surgical Mutilation*, Exec. Order No. 14,187, 90 Fed. Reg. 8771 (Jan. 28, 2025)). Thus, the Court should reject Plaintiffs' attempt to unnecessarily entangle the judiciary in "abstract disagreements over administrative policies." *Abbott Labs.*, 387 U.S. at 148–49. *See also Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995) ("Federal courts cannot—and should not—spend their scarce resources in what amounts to shadow boxing.").[1]

Plaintiffs nevertheless contend that they satisfy both requirements of ripeness (fitness for judicial resolution and hardship absent judicial consideration) because this Court has already determined that the Rule's effects would be felt in a concrete way absent preliminary relief. Pls.' Opp'n at 2. But here too, Plaintiffs ignore that this Court issued preliminary relief in July 2024, based on Plaintiffs' allegations that, for example, Tennessee would face an "immediate increase in state and federal expenditures" "if Tennessee's Medicaid and CoverKids Programs were required to cover sex-transition surgeries[.]" Mem. Op. & Order ("Op.") at 24, ECF No. 29 (citing Pls.' Mot. for Prelim. Inj. ("Pls.' PI Mot."), Ex. A at 3–4, ECF No. 20-1). Nearly one year has passed since that preliminary ruling, and Plaintiffs do not dispute that they have failed, at this stage of the litigation, to allege that they expect to incur any compliance costs; face any credible threats

---

[1] Plaintiffs likewise contend that they should not be left in regulatory limbo while HHS considers engaging in further agency action with respect to § 1557. Pls.' Opp'n at 3–4. But Plaintiffs' speculative fears of enforcement cannot be squared with the President's executive order directing HHS to "take all appropriate actions to end" specified treatments for children with gender dysphoria—"including . . . section 1557." Exec. Order No. 14,187, § 5.

2

of enforcement; or risk losing federal funds because they refuse to provide or cover gender-affirming care. *See* Defs.' Br. at 7–8; Pls.' Opp'n at 2 (relying instead on declarations submitted over a year ago, prior to the change in Administration). *See also Shields v. Norton*, 289 F.3d 832, 836 (5th Cir. 2002) (reversing district court's summary judgment finding on ripeness grounds where there was no "sufficient threat of litigation"). Indeed, Plaintiffs all but concede this point by positing that, in "four years," "future administrations may not share the current administration's enforcement priorities." Pls.' Opp'n at 4. Plaintiffs' fears about what some future government official may do four years from now should be viewed as nothing more than textbook speculation; they cannot obtain prospective relief based on purported harms (to the extent they ever existed) that are now undoubtedly stale. *See, e.g.*, *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 716 (5th Cir. 2012) ("The presence of such a dilemma has been a central feature of cases in which the hardship prong of the ripeness inquiry was held to be satisfied on modification-of-behavior grounds, and its absence here supports our conclusion that [Plaintiffs] will not suffer hardship if court consideration is withheld at this time.").

So instead, Plaintiffs argue that Defendants' ripeness argument is actually one sounding in pre-enforcement standing. Pls.' Opp'n at 3 (citing *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 925 (5th Cir. 2023) and *Florida v. HHS*, 739 F. Supp. 3d 1091, 1102 (M.D. Fla. 2024)). To be sure, "[t]he justiciability doctrines of standing, mootness, political question, and ripeness 'all originate in Article III's "case" or "controversy" language[.]'" *Choice Inc.*, 691 F.3d at 714–15 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). But Plaintiffs cannot simply converge the standing and ripeness inquiries to save their stale claims. To do so would ignore that the ripeness doctrine draws from both Article III *and* "prudential reasons for refusing to exercise jurisdiction." *Id.* (citation omitted). In other words, even if the disputes at issue here were purely legal (they are not), *see* Defs.' Br. at 9–10, Plaintiffs must still establish that "hardship will result if court consideration is withheld *at this time*," *Choice Inc.*, 691 F.3d at 715 (emphasis added). *See also* Defs.' Br. at 8–9 (explaining that mere uncertainty as to the validity of the Rule does not constitute hardship (citing *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812

3

(2003)). That is, while the Article III standing inquiry limits the injury-in-fact assessment to the facts alleged at the time of the complaint, the ripeness inquiry cannot be so similarly cabined. *See, e.g.*, *Ernst & Young*, 45 F.3d at 540 ("[A] claim of hardship demands an assessment of the complainant's position in light of all the attendant circumstances."); *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 479 (D.C. Cir. 1986) (noting that application of *Abbott Laboratories* is not "a matter of weaving complicated legal distinctions divorced from reality," but, rather, requires the exercise of "practical common sense" (cleaned up)), *cert. denied*, 480 U.S. 951 (1987). *But see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (recognizing, even for standing, that "'[e]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))).

Indeed, both *Braidwood* and *Florida* (on which Plaintiffs rely), while recognizing an overlap between standing and ripeness, nonetheless analyzed standing and ripeness separately, focusing exclusively on the *prudential* concerns underlying the ripeness doctrine—*i.e.*, fitness of the issues and hardship of withholding consideration. *See Braidwood*, 70 F.4th at 930 (questioning whether a finding of Article III standing obviates the need to determine whether the "prudential roots of the ripeness doctrine" must also be satisfied); *Florida*, 739 F. Supp. 3d at 1102 (analyzing the "prudential component of ripeness, which focuses on 'both the *fitness* of the issues for judicial decision and the *hardship* to the parties of withholding judicial review'" (citation omitted)). That distinction underscores that Plaintiffs cannot so easily hand-wave their way around the ripeness inquiry. Their failure to allege any actual, imminent enforcement of the Rule at this stage warrants dismissal of the Complaint in its entirety. *Cf. Braidwood*, 70 F.4th at 932 (ripeness exists where litigants "remain under a *constant* threat that government officials will use their power to enforce the law against them" (emphasis added and citations and quotation marks omitted)).

Finally, Plaintiffs attempt to throw cold water on yet another part of the ripeness doctrine—the notion that the dispute requires significant further factual development, *Nat'l Park*, 538 U.S. at 812—by suggesting that this Court implicitly rejected that argument at the preliminary

4

injunction stage, Pls.' Opp'n at 2. To be sure, the Court's decision did not turn on a ripeness inquiry, which is why Plaintiffs rely instead on Judge Jung's July 2024 findings in a parallel § 1557 case challenging the Rule. *See id.* (citing *Florida*, 739 F. Supp. 3d at 1103). But in any event, the now relevant prudential concern—abstaining from resolving the legal question presented to ensure there is a "concrete dispute" about a particular violation—only compounds here. That is because § 1557's statutory scheme does not allow Defendants to immediately withhold federal funding for refusal to provide gender-affirming care or coverage. Defendants cannot withhold federal funding unless they first seek voluntary compliance through informal means, conduct a formal administrative hearing, and issue a written report to Congress. *See* Defs.' Br. at 9–10 (explaining the statutory requirements for withholding federal funds, which Plaintiffs do not dispute). And even then, such a decision would still be subject to Article III judicial review. *See id.*

At bottom, Plaintiffs cannot escape the present-day reality: the Rule remains under consideration by HHS, in accordance with the President's recent executive orders. Thus, in light of these critical developments, Plaintiffs' claims are not ripe, and the Court should dismiss this case in its entirety.

## II. To the Extent the Court Is Inclined to Address the Merits, Any Relief Should Be Properly Limited in Scope

For the reasons stated above, the Court need not reach the merits here, as dismissal without prejudice is warranted. But to the extent the Court determines that portions of the Rule violate the Administrative Procedure Act ("APA"), it should limit any relief to the parties and to the provisions of the Rule that are actually challenged. It should likewise decline to enter any duplicative declaratory relief.

### A. Vacatur of Provisions of the Rule that Plaintiffs Identify But Do Not Actually Challenge Would Be Improper

With respect to vacatur, although Defendants maintain that universal vacatur is not the proper remedy under the APA, *see* Defs.' Br. at 11–12, the parties nevertheless agree that should vacatur apply, it should extend only to those provisions that are "actually challenged," Pls.' Opp'n

5

at 6; *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). But while Plaintiffs recognize this legal requirement, they do not actually respond to the substance of Defendants' arguments. That is, they do not explain why this Court should vacate the provisions of the Rule that say nothing whatsoever about discrimination on the basis of gender identity or sexual orientation.[2] *See* Defs.' Br. at 12–13 (citing, *inter alia*, 45 C.F.R. §§ 92.5 (assurances of nondiscrimination), 92.6 (remedial and voluntary actions by recipients), 92.7 (requirements of § 1557 coordinator)). Instead, they rejoin that this Court has already concluded that the "gender-identity mandates pervade the 2024 Rule." Pls.' Opp'n at 6 (citing Op. at 28). But in adjudicating the scope of the preliminary injunction, the Court stayed certain provisions "in so far as these regulations are intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity." Op. at 28. *See id.* (enjoining Defendants from enforcing the Rule's "provisions concerning gender identity"). Indeed, the Court's language expressly contemplates that only portions of the Rule that concern gender identity should be enjoined. Consequently, it is Plaintiffs' burden at summary judgment to show why provisions relating to assurances of compliance (§ 92.5), remedial action (§ 92.6), § 1557 coordinators (§ 92.7), policies (§ 92.8), training (§ 92.9), notices (§ 92.10), family status (§ 92.208), association (§ 92.209), patient care decision support tools (§ 92.210), nondiscrimination (§ 92.211), enforcement mechanisms (§ 92.301), procedures for State exchanges (§ 92.303), and procedures for HHS (§ 92.304)—which say nothing whatsoever about sexual orientation or gender identity—should be vacated.

Moreover, Plaintiffs' claim that regulated entities should not be forced to determine which parts of the Rule must be followed cuts the other way. *See* Pls.' Opp'n at 6. That is, Plaintiffs' suggestion that the Court vacate provisions—which say nothing whatsoever about sexual

---

[2] To be sure, Plaintiffs have not actually challenged any of the provisions to the extent they implicate discrimination on the basis of sexual orientation. *See* Pls.' PI Motion at 2; Pls.' Opp'n at 7 (claiming that the States only seek vacatur with respect to the provisions that "include protections based on gender identity"). Nor did the Court enjoin any provisions of the Rule on the basis of sexual orientation. Op. at 31.

orientation or gender identity—to the extent they implicate discrimination on the basis of sexual orientation or gender identity makes little practical sense. That formulation of vacatur would require regulated entities to make ad hoc interpretations about how such provisions implicate sexual orientation or gender identity, when nothing in the text of those provisions provides so. By contrast, Defendants' proposition—that the Court sever and vacate only those provisions that actually extend discrimination on the basis of sex to gender identity discrimination, including the provision that defines sex discrimination to include gender identity discrimination, 45 C.F.R. § 92.101(a)(2)(iv)—provides better clarity for regulated entities, while comporting with the Supreme Court's command that severability allows for invalidating provisions that actually exceed the agency's statutory authority. *See* Defs.' Br. at 13.

Finally, Plaintiffs contend that vacatur should not be limited to the parties themselves. Pls.' Opp'n at 7. But that reading of vacatur under § 706 of the APA ignores the fact that when Congress adopted the "unremarkable" "set aside" language in § 706(2), there was no reason to think it "meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) (quoting 5 U.S.C. § 706(2)); *see also California v. Texas*, 593 U.S. 659, 672 (2021) (explaining that remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract'" (citation omitted)). Likewise, this Court should not abandon its "constitutionally prescribed role" "to vindicate the individual rights of the *people appearing before it*." *Gill v. Whitford*, 585 U.S. 48, 72 (2018) (emphasis added); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

### B. Plaintiffs Are Not Entitled to Declaratory Relief

As to the duplicative declaratory relief they seek, Plaintiffs do not meaningfully contend with Defendants' arguments that declaratory judgments are in fact discretionary. *See* Defs.' Br. at 14. Nor do they grapple with the Supreme Court's recognition that such discretionary relief is not typically granted where the issues are not ripe for judicial resolution. *Id.* (citing *Abbott Labs.*, 387 U.S. at 148). In other words, Plaintiffs do not dispute that declaratory relief is inappropriate where, as here, no specific and concrete threat of enforcement exists. Thus, regardless of whether the

dispute is framed as one of ripeness or pre-enforcement standing, *see supra* § I, Plaintiffs' failure to allege that Defendants (or any other entity) have sought to enforce the Rule's prohibition on discrimination on the basis of gender identity against them ultimately dooms their claim for discretionary and duplicative declaratory relief.

Despite the lack of any credible threat of enforcement, and thus, the merely academic dispute between the parties, Plaintiffs nevertheless (1) propose that this Court make declaratory judgments about § 1557 itself, which Plaintiffs have not challenged (as opposed to portions of the Rule that they actually challenge), *see* Pls.' [Proposed] Final Judgment at 2–3, ¶¶ b–e; (2) seek declaratory judgment on the definition of sex that is not party specific, *id.* at 2, ¶ b; and (3) seek declaratory judgment on the definition of sex as it relates to sexual orientation—without ever challenging that part of the Rule in the first instance, *id.* at 2–3, ¶¶ b, f.  District courts, however, do not "sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666 (5th Cir. 1967) (citation omitted).  Nor does this Court need to issue declaratory relief should it choose to vacate the provisions of the Rule that it finds contravene the APA.  *See* Defs.' Br. at 15–16 (explaining why duplicative, discretionary relief makes little practical sense if vacatur is granted).

Accordingly, the Court should decline to enter Plaintiffs' overly broad and duplicative request for declaratory judgment.

## **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' motion for summary judgment and dismiss this case as not ripe.  Should the Court proceed to the merits and find that Plaintiffs are entitled to relief, however, any such relief must be limited to the parties and the provisions of the Rule the Court finds unlawful.

Dated: June 16, 2025                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            YAAKOV M. ROTH
                                            Principal Deputy Assistant Attorney General
                                            Civil Division

                                            MICHELLE R. BENNETT
                                            Assistant Director

                                            <u>*/s/ Sarah M. Suwanda*</u>
                                            SARAH M. SUWANDA
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street NW
                                            Washington, D.C. 20005
                                            Tel.: (202) 305-3196
                                            E-mail: sarah.m.suwanda@usdoj.gov

                                            *Counsel for Defendants*